**No. 22-2090**

In the

# United States Court of Appeals

## For the Fourth Circuit

---

GMS Industrial Supply, Inc.,

*Plaintiff-Appellee,*

v.

Westly L. Greer,

*Defendant-Appellant,*

and

G&S Supply, LLC; Sabrina Greer; Greer Group, LLC; Gregory K. Spires; Country Roads, LLC; Thomas Hayes; Mike Welton; WarTech Industries, LLC; HMC Supply, LLC,

*Defendants.*

---

On Appeal from the United States District Court
for the Eastern District of Virginia at Norfolk
Case No. 2:19-cv-00324
The Honorable Roderick C. Young, District Judge
The Honorable Lawrence R. Leonard, Magistrate Judge

---

### APPELLANT'S OPENING BRIEF

---

Robert W. McFarland          Sean A. McClelland
V. Kathleen Dougherty       McGuireWoods LLP
Jeanne E. Noonan             888 16th Street, N.W.
McGuireWoods LLP            Suite 500
9000 World Trade Center    Black Lives Matter Plaza
101 West Main Street         Washington, DC 20006
Norfolk, VA 23510            T: (202) 828-2838
T: (757) 640-3716

January 19, 2023

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. <u>22-2090</u>      Caption: <u>GMS Industrial Supply, Inc. v. Westly L. Greer</u>

Pursuant to FRAP 26.1 and Local Rule 26.1,

<u>Westly L. Greer</u>
(name of party/amicus)

_____

who is _____<u>appellant</u>_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.  Is party/amicus a publicly held corporation or other publicly held entity?  ☐ YES ☑ NO

2.  Does party/amicus have any parent corporations?  ☐ YES ☑ NO
    If yes, identify all parent corporations, including all generations of parent corporations:

3.  Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?  ☐ YES ☑ NO
    If yes, identify all such owners:

i

4.  Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation? ☐YES ☑NO
    If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question) ☐YES ☑NO
    If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding? ☐YES ☑NO
    If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7.  Is this a criminal case in which there was an organizational victim? ☐YES ☑NO
    If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: /s/ Robert W. McFarland          Date: 1/29/23

Counsel for: Appellant

ii

# TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................1

JURISDICTIONAL STATEMENT .......................................................2

STATEMENT OF ISSUES ...................................................................2

STATEMENT OF THE CASE...............................................................2

STANDARD OF REVIEW ....................................................................5

SUMMARY OF ARGUMENT ..............................................................6

ARGUMENT ..........................................................................................6

I.      The District Court Erred In Denying Greer's Motion For Judgment As A Matter Of Law. .......................................................................6

      A.      Greer Is Not Subject To Virginia Tort Law Because All Of His Allegedly Tortious Conduct Occurred Outside Virginia. ....................7

      B.      A Choice-Of-Law Clause In An Agreement From Years After The Majority of the Tortious Conduct Allegedly Began Does Not Alter That Result. ......................................................................12

II.     This Court Should Direct The District Court To Enter Judgment In Greer's Favor. .......................................................................................17

CONCLUSION ....................................................................................19

STATEMENT REGARDING ORAL ARGUMENT ...........................19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Buchanan v. Doe*,
  431 S.E.2d 289 (Va. 1993) ......................................................................8, 15

*Colgan Air, Inc. v. Raytheon Aircraft Co.*,
  507 F.3d 270 (4th Cir. 2007) ...............................................................15, 16

*Donnert v. Feld Ent., Inc.*,
  612 F. App'x 657 (4th Cir. 2015) ...............................................14, 15, 16

*Gen. Assur. of Am., Inc. v. Overby-Seawell Co.*,
  533 F. App'x 200 (4th Cir. 2013) .............................................................8, 9

*Hitachi Credit Am. Corp. v. Signet Bank*,
  166 F.3d 614 (4th Cir. 1999) ...............................................13, 15, 16

*Jones v. R.S. Jones & Assocs., Inc.*,
  431 S.E.2d 33 (Va. 1993) ...........................................................................8

*McMillan v. McMillan*,
  253 S.E.2d 662 (Va. 1979) ..........................................................................8

*Milton v. IIT Research Inst.*,
  138 F.3d 519 (4th Cir. 1998) .........................................................8, 9, 15

*Port-a-Pour, Inc. v. Peak Innovations, Inc.*,
  49 F. Supp. 3d 841 (D. Colo. 2014)...........................................................11

*Quillen v. Int'l Playtex, Inc.*,
  789 F.2d 1041 (4th Cir. 1986) ....................................................................9

*Sardis v. Overhead Door Corp.*,
  10 F.4th 268 (4th Cir. 2021) .............................................................5, 18

*Smith v. Comair, Inc.*,
  134 F.3d 254 (4th Cir. 1998) ......................................................................9

*Trident Prods. & Servs., LLC v. Canadian Soilless Wholesale, Ltd.*,
  859 F. Supp. 2d 771 (E.D. Va. 2012) ......................................................11

iv

*Variable Annuity Life Ins. Co. v. Coreth*,
    535 F. Supp. 3d 488 (E.D. Va. 2021) ....................................................7

*Weisgram v. Marley Co.*,
    528 U.S. 440 (2000) ......................................................................5, 18

*Words, Inc. v. Xerox Corp.*,
    No. 99-1182, 2000 WL 234502 (4th Cir. Mar. 2, 2000) .............................15, 16

*X-IT Prods., LLC v. Walter Kidde Portable Equip., Inc.*,
    155 F. Supp. 2d 577 (E.D. Va. 2001) ............................................9, 10

**Statutes**

28 U.S.C. § 1291 ........................................................................2

28 U.S.C. § 1367 ........................................................................2

COLO. REV. STAT. § 7-74-107 ...........................................................18, 19

COLO. REV. STAT. § 18-5.5-102 .........................................................11, 19

VA. CODE ANN. § 18.2-152.4 ...............................................................7

VA. CODE ANN. § 18.2-152.12 ..............................................................11

**Rules**

FED. R. CIV. P. 50(e) ......................................................................5

**Other Authorities**

RESTATEMENT (SECOND) OF CONFLICT OF LAWS (1971) ...........................................8

RESTATEMENT (SECOND) OF TORTS (1965 & update 2022) ......................................8

## **INTRODUCTION**

This appeal is one small piece of sprawling, years-long litigation brought by GMS Industrial Supply, Inc. against various of its former sales agents on a range of alleged business torts and contractual claims. The bulk of those claims were dismissed by the district court or rejected by the jury after an eight-day trial.

The central issue here is narrow: whether the district court erred in allowing the jury to consider two Virginia tort law claims against Westly Greer without any evidence that Greer engaged in any relevant conduct in Virginia.

The district court erred. Virginia tort law does not apply to conduct outside the Commonwealth. GMS could not legally prevail from its evidence of Greer's conduct in Colorado, where he lived and worked. There was no other legally-effective hook to Virginia law either; specifically, no contractual choice-of-law clause governed these two Virginia tort claims. Submitting those claims to the jury was therefore legal error.

GMS was long on notice that, properly applied, Virginia tort law requires the sort of in-state conduct that GMS failed to present. Nearly a year before trial, Greer raised the subject in a Rule 11 motion. And he consistently argued the same in virtually every stage of this case. Accordingly, this Court should reverse and direct the entry of judgment in Greer's favor on these two (2) claims.

## JURISDICTIONAL STATEMENT

The district court exercised supplemental jurisdiction over the claims at issue in this appeal under 28 U.S.C. § 1367.  This Court has appellate jurisdiction under 28 U.S.C. § 1291.

## STATEMENT OF ISSUES

1.    Whether the district court erroneously submitted two Virginia tort law claims to the jury despite the lack of any evidence the defendant engaged in any in-state tortious conduct.  (Yes.)

2.    If so, whether the plaintiff's notice of such factual deficiencies and failure to correct them warrant the entry of judgment in the defendant's favor.  (Yes.)

## STATEMENT OF THE CASE

GMS filed suit in the Eastern District of Virginia in June 2019.  JA40-305.  In its operative Third Amended Complaint, GMS alleged that, between 2017 and 2019, Greer (one of GMS's former employees and sales agents who then lived and worked in Colorado) improperly used GMS's confidential business information and deleted information from his company-issued electronic devices without GMS's authorization.  JA346-431.  GMS claimed that conduct gave rise to the two Virginia tort law claims relevant to this appeal: misappropriation of trade secrets under the Virginia Uniform Trade Secrets Act (Count V) and computer trespass under the

Virginia Computer Crimes Act (Count VIII).  JA406-408; JA415-416; *see generally* JA358-359, JA367-373.

Following discovery, Greer sought dismissal of various of GMS's claims under Rule 11 as a sanction for GMS's failure to present (as relevant here) any evidence of Virginia-based tortious conduct.  JA432-434; JA458-459.  The district court denied Greer's motion, concluding that Greer had not presented evidence of improper motive as sufficient to warrant Rule 11 sanctions.  JA517; JA536-538. Those claims therefore proceeded to trial in May and June 2022.

All the trial evidence on the two claims at issue here concerned Greer's conduct in Colorado.  Specifically, at the time of the allegedly tortious conduct, Greer lived and worked in Colorado.[1]  JA1108 (Westly Greer Tr. 38:3–4); *see* JA1204-1206 (Westly Greer Tr. 6:6–8:13), JA1225 (Westly Greer Tr. 27:9–18) (identifying that Greer and his wife lived in Colorado since 2015); *see also* JA903 (Danielle Robichaux Tr. 19:5–11) (identifying that Greer's sales territory with GMS covered Colorado and Kansas); JA767 (Donna Rupley Tr. 14:14–16) (identifying that Greer's wife's primary sales location was Fort Carson, Colorado).  His company—G&S Supply, which he allegedly used to misappropriate GMS's trade secrets—was organized in Colorado.  JA1181 (Westly Greer Tr. 12:9–23).  His alleged misappropriation happened in Colorado.  JA1104-1108 (Westly Greer Tr.

---

[1] Greer now lives in Missouri.  JA1074 (Westly Greer Tr. 4:17–24).

34:11–38:4).  So did his alleged deletion of the information on his devices.  *See* JA119-132 (April 3, 2019 cease and desist letter directed to Greer's address in Colorado); JA1285 (noting that document was admitted at trial); *see also* JA270-271 (April 17, 2019 cease and desist demanding return of electronic devices from Greer's Colorado address to an office in California).

Accordingly, at the close of GMS's case-in-chief, Greer moved for judgment as a matter of law on those claims under Rule 50, on the grounds that Virginia tort law generally does not apply to conduct out of state.  JA1017-1022 (Tr. 30:17–35:10); *see also* JA727-728 (Greer's trial brief arguing the same).  He renewed that motion at the end of trial.  JA1244-1280.  Greer also objected to GMS's proposed jury instructions on those claims for the same reason.  JA718-719.

The district court denied Greer's Rule 50 motions and gave jury instructions that permitted the jury to find against Greer on those Virginia tort claims, notwithstanding the lack of in-state conduct.  *See* JA1281-1282; JA1283-1284; JA1333-1405.  Using those instructions, the jury ultimately returned a verdict against Greer on both counts, awarding GMS $0 on its Virginia Uniform Trade Secrets Act claim and $50,000 on its Virginia Computer Crimes Act claim.  JA1347-1351, JA1352-1353.  The district court entered judgment accordingly.  JA1406.  Greer now appeals.

## STANDARD OF REVIEW

This Court reviews de novo a district court's denial of judgment as a matter of law under Rule 50. *Sardis v. Overhead Door Corp.*, 10 F.4th 268, 279 (4th Cir. 2021). Judgment as a matter of law is warranted if the plaintiff failed to adduce enough "legally sufficient evidence" at trial for the jury to find in its favor. *Id.* In reviewing whether the plaintiff did so, this Court views the facts in the light most favorable to the nonmoving party (here, GMS), but disregards any evidence that was erroneously admitted or is irrelevant to the resolution of the plaintiff's claims. *Id.*

If this Court concludes that the district court erred in denying the Rule 50 motion, it has discretion as to the proper remedy. It can (1) "order a new trial"; (2) "direct the trial court to determine whether a new trial should be granted"; or (3) "direct the entry of judgment" in the moving party's favor. FED. R. CIV. P. 50(e); *see Sardis*, 10 F.4th at 279. In determining which of those options to choose, this Court's touchstone is guaranteeing "fairness to the parties." *Sardis*, 10 F.4th at 299. This Court will thus ordinarily direct the entry of judgment in the moving party's favor when, for instance, the nonmovant was "on notice" of asserted deficiencies prior to trial but "made no attempt to add or substitute" evidence that would address them. *Id.* (quoting *Weisgram v. Marley Co.*, 528 U.S. 440, 456 (2000)).

## SUMMARY OF ARGUMENT

There was no evidence for the jury to find in GMS's favor on these two Virginia tort claims.  Virginia tort law only applies to conduct in Virginia.  GMS failed to present any evidence that Greer engaged in any allegedly tortious conduct in Virginia.  Nor can GMS escape that failure by bootstrapping a choice-of-law provision from a later contract; not only does that clause not apply retroactively, it applies only to contract disputes—not independent tort claims as at issue here.  GMS's evidence was therefore, as a matter of law, legally insufficient to support a verdict on these two Virginia tort law claims.  This Court should reverse.

Moreover, because GMS had been on notice for years that it needed to provide evidence of Virginia-based conduct, but failed to produce any, this Court should direct the district court to enter judgment in Greer's favor on these claims.

## ARGUMENT

I.    **The District Court Erred In Denying Greer's Motion For Judgment As A Matter Of Law.**

GMS provided insufficient evidence of Virginia-based conduct to submit its Virginia Uniform Trade Secrets Act claim (Count V) and Virginia Computer Crimes Act claim (Count VIII) to the jury.  Virginia's choice-of-law rules apply the tort law of the place where the allegedly tortious conduct occurred.  Here, that was Colorado—not Virginia.  It was therefore error to submit the Virginia claims to the jury.

A choice-of-law provision agreed to mere months before Greer was terminated by GMS as an independent sales agent does not change that result. That clause came into being years after most of the alleged misconduct occurred. Moreover, the clause applies only to contract-related claims; the torts at issue here are distinct from the contract itself. Thus, Virginia tort law is still inapplicable.

## A. Greer Is Not Subject To Virginia Tort Law Because All Of His Allegedly Tortious Conduct Occurred Outside Virginia.

Greer was erroneously subjected to Virginia tort law. Under the black letter *lex loci delecti* doctrine applicable in Virginia courts, the place of the wrongful conduct governs the existence and viability of tort claims. And all of Greer's allegedly wrongful conduct occurred in Colorado. Any tort claims against him should have proceeded, if at all, under Colorado law. Submitting Virginia tort claims to the jury was error.

Both claims at issue in this appeal are Virginia tort claims. Misappropriation of trade secrets under the Virginia Uniform Trade Secrets Act is a codification of the classic common-law tort of the same name. *See, e.g.*, *Variable Annuity Life Ins. Co. v. Coreth*, 535 F. Supp. 3d 488, 512 (E.D. Va. 2021) (applying Virginia law) ("The [Virginia Uniform Trade Secrets Act] codifies the tort of misappropriation of trade secrets."). GMS's Virginia Computer Crimes Act claim is essentially a computer-based version of a trespass claim, another archetypical tort. *See* VA. CODE ANN. § 18.2-152.4 (describing the proscribed conduct as "Computer Trespass"); *see also*

7

RESTATEMENT (SECOND) OF TORTS §§ 216–22 (1965 & update 2022) (describing the analogous trespass-to-chattels common-law tort). Both claims are, in short, paradigmatic "civil wrong[s] or injur[ies]." *Milton v. IIT Research Inst.*, 138 F.3d 519, 522 (4th Cir. 1998) (quoting *Buchanan v. Doe*, 431 S.E.2d 289, 291 (Va. 1993)). They are therefore both torts under Virginia law.

Virginia tort law generally does not apply beyond the Commonwealth's borders under basic choice-of-law principles. *See Milton*, 138 F. 3d at 521 (noting that a federal district court in Virginia applies Virginia choice-of-law rules). In Virginia, torts are subject to the *lex loci delicti* doctrine: the substantive law of the "place of the wrong"—not Virginia law—governs the existence and viability of tort claims. *Id.*; *Jones v. R.S. Jones & Assocs., Inc.*, 431 S.E.2d 33, 34 (Va. 1993) (describing the doctrine as "the settled rule in Virginia" (quoting *McMillan v. McMillan*, 253 S.E.2d 662, 663 (Va. 1979))).[2] In that framework, the place of the wrong is the place where "the last event necessary to make [an actor] liable for an alleged tort takes place." *Gen. Assur. of Am., Inc. v. Overby-Seawell Co.*, 533 F.

---

[2] Virginia has pointedly declined to adopt the alternative "most significant relationship" approach suggested by the Restatement, which in "rare" instances permits claims arising from the law of a state other than the state where the conduct occurred. RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 145 (1971); *see Jones*, 431 S.E.2d at 34 (identifying that the Virginia Supreme Court of Virginia has "declined an invitation to adopt the so-called 'most significant relationship' test"). Virginia's *lex loci delicti* rule lacks such "rare" instances; as discussed, it virtually always selects the law of the conduct-state for tort claims.

App'x 200, 206 (4th Cir. 2013) (alteration in original) (quoting *Quillen v. Int'l Playtex, Inc.*, 789 F.2d 1041, 1044 (4th Cir. 1986)). That place is ordinarily where the tortfeasor engaged in the conduct—not where the injury is felt. *Id.* ("We will not apply the law of a state in which only the effect of the wrongful act, such as economic impact, is felt."); *Milton*, 138 F.3d at 522 ("Virginia clearly selects the law of the place where the wrongful act occurred, even when that place differs from the place where the effects of injury are felt."). Put simply: if the allegedly tortious conduct happened in another state, Virginia tort law does not apply.

Accordingly, Virginia tort claims cannot proceed to a jury absent evidence of in-state conduct. *See Milton*, 138 F.3d at 522. Following this principle, this Court has, for instance, barred Virginia false imprisonment and intentional infliction of emotional distress claims against a confinement in Kentucky, *Smith v. Comair, Inc.*, 134 F.3d 254, 259–60 (4th Cir. 1998), and Virginia wrongful discharge claims stemming from terminations in Maryland and North Carolina, *Milton*, 138 F.3d at 521–22; *Overby-Seawell*, 533 F. App'x at 206–07. District courts in this Circuit have similarly refused to apply Virginia law in cases involving out-of-state conduct on virtually identical claims to those at issue in this appeal. *X-IT Prods., LLC v. Walter Kidde Portable Equip., Inc.*, 155 F. Supp. 2d 577, 640 (E.D. Va. 2001) (barring a Virginia Uniform Trade Secrets Act claim against trade secret misappropriation that occurred in Illinois and North Carolina). Those claims must

9

be submitted to a jury, if at all, under the corresponding law of the proper jurisdiction.

That requirement dooms GMS's Virginia tort claims against Greer.  All of Greer's allegedly tortious conduct occurred in Colorado—not Virginia.  Colorado is where he allegedly misused GMS's electronic data.  JA1104-1108 (Westly Greer Tr. 34:11–38:4).  Colorado is also where he allegedly deleted material off of his devices.  *See* JA119-132; JA1285; *see also* JA270-271.  That means that Colorado law—not Virginia law—should have applied to these claims against Greer.  *E.g.*, *X-IT Prods.*, 155 F. Supp. 2d at 640 (Virginia tort law did not apply where the defendants allegedly received and misused trade secrets at an office in Illinois and a principal place of business in North Carolina).  It was thus error to instruct and submit to the jury these two Virginia tort claims, involving solely Colorado conduct.

Interestingly, GMS previously affirmatively argued that Colorado tort law— not Virginia tort law—applied to certain of its claims against Greer.  JA567-568, JA592-598 (requesting Colorado jury instructions for a breach of duty of loyalty claim).  Those claims were premised on substantially the same alleged conduct, including, most significantly, Greer's alleged misuse of GMS's information.  *See* JA567-568, JA592-598.  As discussed, all of that conduct only happened (and only could have happened) in Colorado, where Greer lived and worked.  JA1104-1108 (Westly Greer Tr. 34:11–38:4); *see* JA119-132; JA1285; *see also* JA270-271.  GMS

10

correctly pursued (some) claims under Colorado law. The same result applies to the tort claims at issue in this appeal; Colorado law governs them as well. Submitting these tort claims under Virginia law was therefore error.

The proper choice of law is not idle musing. Colorado law is substantially narrower than Virginia law on these substantive claims. Although Colorado has adopted its own version of the Uniform Trade Secrets Act, its law on what constitutes a trade secret is considerably more probing than Virginia's. *Compare Port-a-Pour, Inc. v. Peak Innovations, Inc.*, 49 F. Supp. 3d 841, 867 (D. Colo. 2014) (applying Colorado law) (identifying that Colorado law considers at least six factors in determining whether something is a trade secret), *with Trident Prods. & Servs., LLC v. Canadian Soilless Wholesale, Ltd.*, 859 F. Supp. 2d 771, 778 (E.D. Va. 2012) (applying Virginia law) (identifying that Virginia law generally considers only three factors on that question). And, perhaps even more critically, Colorado's computer crime statute does not provide a private right of action. *Compare* COLO. REV. STAT. § 18-5.5-102 (providing only criminal penalties), *with* VA. CODE ANN. § 18.2-152.12 (providing private rights of action). Thus, if properly pleaded, as Colorado tort law applies (and under Virginia's choice-of-law rules it plainly does), these two claims faced higher hurdles which GMS could not clear. By extending Virginia tort law to Greer's conduct in another state, the district court improperly turned nonviable claims into viable ones.

11

GMS's Virginia tort claims against Greer could not proceed absent evidence of Virginia based conduct.  GMS failed to present that evidence.  The district court therefore erroneously denied Greer's motion for judgment as a matter of law on GMS's Virginia Uniform Trade Secrets Act and Virginia Computer Crimes Act claims.

### B.    A Choice-Of-Law Clause In An Agreement From Years After The Majority of The Tortious Conduct Allegedly Began Does Not Alter That Result.

There is no sidestepping the legal conclusion that Virginia tort law does not apply to Greer's conduct in Colorado.  GMS has nonetheless argued (and the district court apparently thought) that Virginia's standard *lex loci delecti* doctrine could be overridden because there was a choice-of-law clause in Greer's last sales agent contract with GMS.[3]  *E.g.*, JA744-745.

That argument is incorrect.  The bulk of Greer's allegedly tortious conduct happened well before that choice-of-law provision took effect.  Perhaps even more important, none of the conduct directly arose from, or was related to, the contract

---

[3] The district court's orders denying Greer's Rule 50 motions did not explain why it determined these Virginia claims could be submitted to the jury.  JA1281-1282; JA1283-1284.  But the court's questions during one of the hearings on the subject indicate that the court apparently based its decision on the choice-of-law provision in Greer's last contract.  JA1019-1020 (Tr. 32:23–33:2) ("But what about the forum selection clause? Why isn't it a reasonable interpretation that no matter where this takes place—it could take place in Alaska—we're agreeing that Virginia law is going to cover it?").

itself.  There is thus no reason to conclude that the parties agreed to be governed by Virginia law with respect to these tort claims.

There is, to be sure, a limited exception to Virginia's general *lex loci delicti* rule for "contract-related torts" covered by certain types of contractual choice-of-law provisions.  *Hitachi Credit Am. Corp. v. Signet Bank*, 166 F.3d 614, 628 (4th Cir. 1999).  Specifically, this Court has said that if the parties have agreed to a "choice of law clause" "sufficiently broad to encompass contract-related tort claims such as fraudulent inducement," then a court can properly apply the chosen law to those covered contract-related tort claims.  *Id.*  Parties can thus agree to be governed by a given law for torts that implicate the continued existence of a contract, just as they can for analogous contract claims.  *Id.*

But that exception is inapplicable here for at least two reasons.  First, and most obviously, Greer was not subject to any choice-of-law provision for the majority of his time with GMS.  His alleged tortious conduct occurred from 2017 until April, 2019.  Greer's 2012 employment contract with GMS—the operative agreement during virtually all of the complained-of conduct—did not contain any choice of law provision.  JA1415-1416, JA307-308; *see* JA358-359, JA367-373 (alleging that the misconduct "commenc[ed] in or about 2017" and continued through "April 2019"); JA1104-1108 (Westly Greer Tr. 34:11–38:4).  That contract could not therefore alter, let alone govern, the choice-of-law calculus.

Only Greer's subsequent 2019 independent sales agent agreement (two years after he allegedly started engaging in tortious conduct) contained a choice of law clause. JA1412, JA312.[4] But even that clause only purported to govern disputes "arising from [the new] Agreement"—not prior disputes arising from his earlier employment contract or from his agency relationship more broadly. JA1412, JA312; *cf. Donnert v. Feld Ent., Inc.*, 612 F. App'x 657, 663 (4th Cir. 2015) (applying a choice-of-law provision to a retaliatory discharge claim where the provision applied "'all claims and disputes relating' to 'the employment relationship'"). By the time Greer signed the 2019 sales agent agreement, he was no longer a GMS employee, and had already engaged in the majority of the allegedly-tortious conduct for years. That means that, even assuming the tort claims were "contract-related" (and they are not), the vast majority of that relationship is governed by the earlier 2012 employment agreement, which lacks any choice-of-law clause whatsoever. Thus, the standard *lex loci delicti* doctrine still applies, and Virginia tort claims are off the table because the conduct occurred in another state.

The second reason the choice-of-law exception is inapplicable is that the tort claims at issue in this appeal (misappropriation of trade secrets and computer

---

[4] That 2019 agreement was only in effect for a few months, a fraction of the time of Greer's earlier employment agreement: he was fired approximately two months after he signed it. *See* JA373 (agent agreement dated January 21, 2019); JA1115 (Westly Greer Tr. 45:12–16) (noting that Greer was fired on April 3, 2019).

trespass) are not "contract-related" claims. *Hitachi*, 166 F.3d at 628. That category is narrow; this Court has only found that claims going to the existence of the contract itself qualify. *Id.* (fraudulent inducement claim); *Donnert*, 612 F. App'x at 663 (retaliatory discharge claim); *see Words, Inc. v. Xerox Corp.*, No. 99-1182, 2000 WL 234502, at *2 (4th Cir. Mar. 2, 2000) (per curiam) ("[W]hen the alleged torts are not distinct from any pre-existing contract between the parties, any choice of law provisions within the contracts shall determine the applicable law."). Therefore, tort claims that are distinct from the contract—because, for instance, they turn on conduct above and beyond the contract relationship itself—are not "contract-related" for these purposes. *See, e.g.*, *Colgan Air, Inc. v. Raytheon Aircraft Co.*, 507 F.3d 270, 275 (4th Cir. 2007) (using Virginia choice-of-law rules and applying site-of-conduct Massachusetts law to tort claims notwithstanding choice-of-law provision in contract designating Kansas law for contract claims). This is for good reason: allowing choice-of-law clauses to sweep up all manner of independent torts would swallow Virginia law's direction that virtually all "civil wrong[s]" should be assessed under the laws where the wrong actually happened. *Milton*, 138 F.3d at 522 (quoting *Buchanan*, 431 S.E.2d at 291). Adhering to this sound policy, torts independent from the contract itself receive the standard *lex loci delicti* treatment.

The claims at issue here are separate from the parties' contracts and therefore not covered by the 2019 choice-of-law provision. The claims do not concern the

tortious creation, *Hitachi*, 166 F.3d at 628, or tortious termination, *Donnert*, 612 F. App'x at 663, of any contractual relationship. They concern independent alleged wrongs—misappropriated trade secrets and unauthorized computer use, respectively—above and beyond the parties' existing contracts. *See* JA358-359, JA367-373; *see also Colgan*, 507 F.3d at 275. They are, to be sure, "distinct" from the contracts. *Cf. Words*, 2000 WL 234502, at *2.

Notably, the only choice-of-law clause potentially applicable to Greer does not cover all claims under the sun; it covers only those "arising from" the 2019 agreement itself. JA1412, JA312. And the claims at issue here are not "contract-related torts" covered by that provision and do not arise from the sales agent agreement. *Cf. Hitachi*, 166 F.3d at 628. In that respect, Greer received the devices at issue in 2017, when he was a GMS employee, with different duties to GMS than in 2019, when he became an independent sales agent. His alleged misappropriation occurred before the 2019 agreement, and his deletion of GMS's information in April, 2019 is unrelated to and does not arise from his 2019 sales agent agreement. JA1104-1108 (Westly Greer Tr. 34:11–38:4); *see* JA119-132; JA1285; *see also* JA270-271. Indeed, the vast majority of that deleted information was obtained years before the 2019 agreement was signed, and it was not deleted because of Greer's position as a sales agent. In fact, the computer claim was tied to Greer's breach of

16

fiduciary duty claim, which only arose because of his prior status as a GMS employee.

Simply put: there is no choice-of-law provision that would revive the application of Virginia tort law for these claims. The clause in the agency agreement came into effect years after Greer allegedly began misappropriating GMS's trade secrets. And, like most choice-of-law clauses, that clause covered only claims "arising from" the contract itself—not independent tort claims like those GMS brought. Standard *lex loci delicti* doctrine thus governs this dispute. As discussed, under that doctrine, Virginia tort law does not apply. GMS's Virginia tort law claims therefore fail as a matter of law and should have been dismissed before or at trial.

*    *    *

The district court erred in denying Greer's motion for judgment as a matter of law on GMS's Virginia Uniform Trade Secrets Act claim (Count V) and Virginia Computer Crimes Act claim (Count VIII). This Court should reverse the judgments on these claims.

## II.    This Court Should Direct The District Court To Enter Judgment In Greer's Favor.

As described above, the district court erroneously denied Greer's motion for judgment as a matter of law on the two Virginia tort law claims at issue here. This Court should direct the entry of judgment in Greer's favor on those claims on remand.

17

GMS has long been on notice that it would need to show some Virginia-based conduct for its Virginia tort claims to be viable. Greer raised the issue nearly a year in advance of trial, JA458-459, and reiterated it multiple times before, during, and after GMS's trial presentation, JA1017-1022 (Tr. 30:17–35:10); JA1244-1280; JA718-719. These efforts put GMS on notice of its deficiencies in trying to prevail on Virginia tort claims for Greer's conduct in Colorado. *See Sardis*, 10 F.4th at 299 (concluding that this Court could fairly direct judgment in a defendant's favor in part because a pre-trial motion in limine put the plaintiff on notice of the deficiencies in an expert report).

Yet GMS made no effort to demonstrate that Greer engaged in any relevant conduct in Virginia. Nor could it have. Greer lived, worked, and allegedly engaged in the relevant conduct in Colorado. GMS knew those facts and even specifically argued that Colorado law governed some of its other tort claims. JA567-568, JA592-598. That GMS did not—and could not—"attempt to add or substitute" evidence of Virginia conduct to support its Virginia tort claims is therefore fatal. *Sardis*, 10 F.4th at 299 (quoting *Weisgram*, 528 U.S. at 456).

Allowing these two (2) claims to be relitigated under properly applicable Colorado law would be futile and unfairly prejudicial to Greer. If a Colorado trade secrets claim were raised now, it would be barred by the statute of limitations. Colorado has a three-year limitations period for such claims, COLO. REV. STAT. § 7-

74-107, and all the relevant conduct ended over three years ago—specifically, in April 2019. *See* JA358-359, JA367-373. GMS's computer crimes claim also fails under Colorado law; as discussed, Colorado's computer crime statute does not provide a private right of action. COLO. REV. STAT. § 18-5.5-102. In the face of these realities, and as the rest of the case is concluded, forcing Greer to incur the expense and inconvenience of yet more proceedings under the correct law is not in the interests of justice. GMS tried to litigate Virginia tort claims against Greer's Colorado conduct for nearly four years. Greer identified that GMS needed evidence of Virginia conduct to prevail. GMS failed to produce it. Accordingly, this Court can and should follow its typical practice and direct the entry of judgment in Greer's favor.

## CONCLUSION

For the foregoing reasons, this Court should reverse the district court's denial of Greer's motion for judgment as a matter of law with respect to GMS's Virginia Uniform Trade Secrets Act claim (Count V) and Virginia Computer Crimes Act claim (Count VIII), and remand with instructions to enter judgment in Greer's favor.

## STATEMENT REGARDING ORAL ARGUMENT

Appellant believes that oral argument would substantially aid this Court in determining whether the district court erred in permitting the jury to consider

Virginia tort law claims absent evidence of in-state conduct. Appellant therefore requests oral argument in this matter.

Dated: January 19, 2023          /s/ Robert W. McFarland

Robert W. McFarland
V. Kathleen Dougherty
Jeanne E. Noonan
MCGUIREWOODS LLP
9000 World Trade Center
101 West Main Street
Norfolk, VA 23510
T: (757) 640-3700
F: (757) 640-3701
rmcfarland@mcguirewoods.com
vkdougherty@mcguirewoods.com
jnoonan@mcguirewoods.com

Sean A. McClelland
MCGUIREWOODS LLP
888 16th Street, N.W.
Suite 500
Black Lives Matter Plaza
Washington, DC 20006
T: (202) 828-2838
F: (202) 828-2976
smcclelland@mcguirewoods.com

*Counsel for Defendant-Appellant*

## <u>CERTIFICATE OF COMPLIANCE</u>

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

- This brief contains 4,505 words, excluding the parts exempted by Fed. R. App. P. 32(f).

This brief complies with the typeface and type style requirements of Fed. R. App. P. 32(a)(5) and 32(a)(6) because:

- This brief has been prepared in a proportionally spaced 14-point Times New Roman font using Microsoft Word.

*/s/ Robert W. McFarland*
Robert W. McFarland

*Counsel for Defendant-Appellant*

21

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 19, 2023, I filed the foregoing with the Clerk of the United States Court of Appeals for the Fourth Circuit using the appellate CM/ECF system, which will also serve counsel of record.

*/s/ Robert W. McFarland*
Robert W. McFarland

*Counsel for Defendant-Appellant*
