# 22-2090

# United States Court of Appeals
### *for the*
# Fourth Circuit

GMS INDUSTRIAL SUPPLY, INC.,

*Plaintiff/Appellee,*

– v. –

WESTLY L. GREER,

*Defendant/Appellant,*

and

G&S SUPPLY, LLC; SABRINA GREER; GREER GROUP, LLC;
GREGORY K. SPIRES; COUNTRY ROADS, LLC;
THOMAS HAYES; MIKE WELTON;
WARTECH INDUSTRIES, LLC; HMC SUPPLY, LLC,

*Defendants.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA AT NORFOLK

# BRIEF OF APPELLEE

WILLIAM A. LASCARA
THOMAS S. BERKLEY
JEFFREY D. WILSON,
PENDER & COWARD, P.C.
222 Central Park Avenue #400
Virginia Beach, Virginia 23462
(757) 502-7326

*Counsel for Appellee*

CP  COUNSEL PRESS • VA – (804) 648-3664

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.


No. __22-2090__     Caption: __GMS Industrial Supply, Inc. v. Westley L. Greer, et al.__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__GMS Industrial Supply, Inc.__
(name of party/amicus)

_____

 who is _____appellee_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)


1.     Is party/amicus a publicly held corporation or other publicly held entity?     ☐YES ☑NO


2.     Does party/amicus have any parent corporations?                    ☐YES ☑NO
       If yes, identify all parent corporations, including all generations of parent corporations:




3.     Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or
       other publicly held entity?                                    ☐YES ☑NO
       If yes, identify all such owners:

4.  Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation? ☐YES ☑NO
If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question) ☐YES ☑NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding? ☐YES ☑NO
If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7.  Is this a criminal case in which there was an organizational victim? ☐YES ☑NO
If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: /s/ William A. Lascara, Esq.          Date: February 21, 2023

Counsel for: GMS Industrial Supply, Inc.

Print to PDF for Filing

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................. ii

SUMMARY OF THE ARGUMENT ....................................................1

ARGUMENT .......................................................................................2

    A.    The District Court did not err in denying Greer's Motion for Judgment as a Matter of Law because Greer contractually agreed to Virginia choice of law ......................................................2

    B.    Even though Greer argues that his misconduct started before he entered into the Agreement, the District Court did not err in denying Greer's Motion for Judgment as a Matter of Law..................8

    C.    All contract-related torts are subject to an appropriate choice of law provision and not just torts that go to the existence of the contract itself ..................................................................15

    D.    Even if this Court applies the doctrine of *lex loci delicti*, the choice of law was appropriate ...........................................18

    E.    If there was error, the remedy should be to remand the case for retrial on the issues of trade secret misappropriation and cybercrimes under Colorado law, not dismissal .................................19

CONCLUSION ...................................................................................22

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF FILING AND SERVICE

i

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Atlantic & Gulf Stevedores, Inc. v. Ellerman Lines, Ltd.,*
    369 U.S. 355 (1962)......................................................................................13

*Blanton v. Great Atl. & Pac. Tea Co.,*
    61 F.2d 427 (5th Cir. 1932) ...........................................................................14

*Bresler v. Wilmington Trust Co.,*
    855 F.3d 178 (4th Cir. 2017) .........................................................................12

*Callahan v. Pac. Cycle, Inc.,*
    756 F. App'x 216 (4th Cir. 2018) .....................................................................8

*Canal Insurance Company v. Lebanon Insurance Agency, Inc.,*
    504 F. Supp. 2d 113 (W.D. Va. 2007)..............................................................4

*Colgan Air, Inc. v. Raytheon Aircraft Co.,*
    507 F.3d 270 (4th Cir. 2007) ...................................................................17, 18

*Corinthian Mortg. Corp v. Choicepoint Precision Mktg., LLC,*
    2008 U.S. Dist. LEXIS 28129 (E.D. Va. Apr. 4, 2008) ................................16

*Dulaney v. Packaging Corp. of Am.,*
    673 F.3d 323 (4th Cir. 2012) ...........................................................................2

*Ellis v. Weasler Eng'g, Inc.,*
    258 F.3d 326 (5th Cir. 2001) .........................................................................13

*Ferguson v. Nat'l Freight Inc.,*
    692 F. App'x 756 (4th Cir. 2017)...................................................................12

*Gilmore v. Jones,*
    370 F. Supp. 3d 630 (W.D. Va. 2019)...........................................................18

*Gentry v. E. W. Partners Club Mgmt. Co.*,
    816 F.3d 228 (4th Cir. 2016) .........................................................................13

*GreCon Dimter, Inc. v. Horner Flooring Co*.,
    114 F. App'x 64 (4th Cir. 2004) ..................................................................18

*Hitachi Credit Am. Corp. v. Signet Bank*,
    166 F.3d 614 (4th Cir. 1999) ....................................................................3, 4

*Integrity Applied Sci., Inc. v. Clearpoint Chems. LLC*,
    2020 U.S. Dist. LEXIS 260199 (D. Colo. 2020)..........................................21

*Mulvey Constr., Inc. v. Bituminous Cas. Corp*.,
    571 F. App'x 150 (4th Cir. 2014) ..................................................................2

*Paul Business Systems, Inc. v. Canon U.S.A., Inc.*,
    240 Va. 337, 397 S.E.2d 804 (1990) ......................................................3, 6, 16

*Phillips v. Pneumo Abex, LLC*,
    713 F. App'x 191 (4th Cir. 2017) ................................................................13

*Precision Pipeline, LLC v. Dominion Transmission, Inc.*,
    Civil Action No. 3:16-CV-00180,
    2017 U.S. Dist. LEXIS 42498 (E.D. Va. Mar. 23, 2017)...............................4

*Pyott-Boone Elecs., Inc. v.*
*IRR Tr. for Donald L. Fetterolf Dated December 9, 1997*,
    918 F. Supp. 2d 532 (W.D. Va. 2013).............................................................3

*Run Them Sweet, LLC v. CPA Glob. Ltd.*,
    224 F. Supp. 3d 462 (E.D. Va. 2016) ..................................................5, 16, 19

*Star Dev. Grp., LLC v. Darwin Nat'l Assurance Co*.,
    813 F. App'x 76 (4th Cir. 2020) ....................................................................2

*Tate v. Hain*,
    181 Va. 402, 25 S.E.2d 321 (1943) ................................................................4

*Thornhill v. Donnkenny, Inc.*,
    823 F.2d 782 (4th Cir. 1987) ..........................................................................3

*United States v. Massenburg*,
    564 F.3d 337 (4th Cir. 2009) ...........................................................9

*United States v. McDonnell*,
    792 F.3d 478 (4th Cir. 2015) .........................................................13

*United States v. Moore*,
    11 F.3d 475 (4th Cir. 1993) .............................................................9

*United States v. Pratt*,
    239 F.3d 640 (4th Cir. 2001) ...........................................................9

*United States v. Zayyad*,
    741 F.3d 452 (4th Cir. 2014) ........................................................8, 9

*Weiler v. Arrowpoint Corp.*,
    No. 1:10cv157,
    2010 U.S. Dist. LEXIS 46163 (E.D. Va. May 11, 2010).............................16

## **STATUTES**

28 U.S.C. § 2111 ...............................................................................14

Colo. Rev. Stat. § 7-74-102 *et seq* .........................................................21

Colo. Rev. Stat. § 18-5.5-102 ...............................................................21

Va. Code § 18.2-499 .........................................................................16

## **RULES**

Fed. R. Civ. P. 50 ...........................................................................12

Fed. R. Civ. P. 50(E).........................................................................19

# **<u>OTHER AUTHORITIES</u>**

Am. Jur. Vol. 11, Sec. 119 Conflict of Laws...............................................................4

Robert L. Felix & Ralph U. Whitten,
*American Conflicts Law* § 126 (6th ed. 2011).........................................................3

## SUMMARY OF THE ARGUMENT

Appellant Westly Greer ("Greer"), having been found civilly liable by a jury for violations of the Virginia Uniform Trade Secret Act ("VUTSA") and Virginia Computer Crimes Act ("VCCA"), now appeals the jury verdict. Greer contends that he should be excused from his misconduct because he was not physically present in Virginia when he engaged in the misconduct. Greer's appeal fails because the longstanding law in Virginia provides that contract-related torts are subject to an appropriate Virginia choice of law provision – such as the Virginia choice of law clause in the Independent Agent Agreement between Greer and GMS (the "Agreement") at issue in this case by which Greer voluntarily, contractually agreed to Virginia choice of law.

In addition to failing on the merits, Greer's appeal should be dismissed for a litany of procedural issues. Notably, Greer challenges the District Court's denial of his Motion for Judgment as a Matter of the Law, and, on appeal, Greer engages in new arguments that he never raised in his Motion for Judgment as a Matter of Law. Indeed, at times Greer made the opposite arguments at trial. Greer also **misquotes in his brief the key choice of law provision in the Agreement**. This Court should ignore Greer's newly raised arguments (which fail on the merits in any event) and dismiss the appeal. The District Court did not err in denying Greer's Motion for Judgment as a Matter of Law.

1

# **ARGUMENT**

A.  *The District Court did not err in denying Greer's Motion for Judgment as a Matter of Law because Greer contractually agreed to Virginia choice of law.*

The District Court did not err in denying Greer's Motion for Judgment as a Matter of Law and submitting GMS's VUTSA and VCCA claims to the jury because those claims are subject to Virginia law by virtue of the express, contractual choice of law provision between the parties.

This appeal involves a review of the District Court's choice of law determination, as well as an interpretation of the contract between GMS and Greer. This Court reviews issues of choice of law and contract interpretation de novo. *See Mulvey Constr., Inc. v. Bituminous Cas. Corp.*, 571 F. App'x 150, 154 (4th Cir. 2014); *Star Dev. Grp., LLC v. Darwin Nat'l Assurance Co.*, 813 F. App'x 76, 81 (4th Cir. 2020). Under the de novo standard, the Court must "view[] all facts and reasonable inferences in the light most favorable to the non-moving party." *Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012).

As a preliminary matter, both parties agree that Virginia's choice of law rules control the analysis in this case. The parties disagree, however, on how Virginia's choice of law rules apply to the facts of this case. Although Greer dedicates a significant portion of his brief to a discussion on Virginia's *lex loci delicti* rule, the analysis is more appropriately focused on Virginia's enforcement of contractual

choice of law provisions.  Notwithstanding Virginia's adoption of the *lex loci delicti*

rule, the Virginia Supreme Court nevertheless has held that "the rule in Virginia . . .

[is] that where parties to a contract have expressly declared that the agreement shall

be construed as made with reference to the law of a particular jurisdiction, [the

Court] will recognize such agreement and enforce it, applying the law of the

stipulated jurisdiction." *Paul Bus. Sys., Inc. v. Canon U.S.A., Inc.*, 240 Va. 337, 342,

397 S.E.2d 804, 807 (1990); *see also Thornhill v. Donnkenny, Inc.*, 823 F.2d 782,

787 (4th Cir. 1987) ("Virginia conflicts of law rules generally honor contractual

choice of law provisions.").

There is good reason for the enforcement of such provisions: parties to a

contract can "use express contractual choice-of-law provisions 'as a business

planning device which, if properly executed, should enhance the security of the party

expectations and reduce uncertainties in litigation.'" *Pyott-Boone Elecs., Inc. v. IRR

Tr. for Donald L. Fetterolf Dated December 9, 1997*, 918 F. Supp. 2d 532, 544 (W.D.

Va. 2013) (quoting Robert L. Felix & Ralph U. Whitten, *American Conflicts Law*

§ 126 (6th ed. 2011)).

Notably, the Fourth Circuit has recognized that "[w]here a choice of law

clause in the contract is sufficiently broad to encompass contract-related tort claims

such as fraudulent inducement, other courts have honored the intent of the parties to

choose the applicable law." *Hitachi Credit Am. Corp. v. Signet Bank*, 166 F.3d 614,

628 (4th Cir. 1999). "'[T]he true test for the determination of the proper law of a contract is the intent of the parties and that this intent whether express or implied, will always be given effect except under exceptional circumstances evincing a purpose in making the contract to commit a fraud on the law.'" *Tate v. Hain*, 181 Va. 402, 410, 25 S.E.2d 321, 324 (1943) (quoting Am. Jur. Vol. 11, Sec. 119, Conflict of Laws); *see also Canal Insurance Company v. Lebanon Insurance Agency, Inc.,* 504 F. Supp. 2d 113 (W.D. Va. 2007) ("Virginia Courts have long enforced contractual claim of law provision as long as such provisions are not unconscionable or in contravention of public policy").

With respect to a written contract, the question of whether a contract-related tort claim is subject to a contractual choice of law provision depends upon the specific language of the agreement itself. *See, e.g. Precision Pipeline, LLC v. Dominion Transmission, Inc.*, Civil Action No. 3:16-CV-00180, 2017 U.S. Dist. LEXIS 42498, at *7 (E.D. Va. Mar. 23, 2017) (citing *Hitachi,* 166 F.3d at 624) ("After finding a choice of law provision valid, a court must still determine which claims the relevant law applies to.")

In this case, the Agreement is broad enough to encompass contract-related torts. The Agreement states, in pertinent part,

> **This Agreement shall be governed by and construed in accordance with the laws of the State of Virginia without giving effect to any choice of law provisions. Any dispute that should arise will be handled accordingly**. Both parties agree that the exclusive venue for any action, demand, claim or counterclaim relating to or arising from this Agreement, shall be in the state or federal courts located in Virginia

Beach Virginia and that such courts shall have personal jurisdiction over the parties to this Agreement."

JA1412 (emphasis added).

The plain language of the Agreement dictates that GMS's claims against Greer are to be governed by Virginia law, including contract-related torts such as claims under VUTSA and VCCA. After all, the VUTSA claim is directly tied to and intertwined with the confidentiality provisions of the Agreement. *See* JA1410-1411. Likewise, the VCCA claim is based upon Greer's deletion of data from his work computer and tablet shortly after his termination as a sales agent. As discussed in more detail below, his use of and access to the work devices was solely by virtue of his position as GMS's sales agent – the very relationship created by and defined by the Agreement.

Courts have dealt with similar contractual language and reached the same conclusion. For example, in *Run Them Sweet, LLC v. CPA Glob. Ltd.*, 224 F. Supp. 3d 462, 466 (E.D. Va. 2016), the District Court held that the plain meaning of an agreement that stated it shall be "governed by and construed in accordance with" Virginia law was "that the parties intended the provision to cover contract-related tort and unjust enrichment claims." *Id.* at 467. The court reasoned that, "[b]ecause the parties used both ["governed" and "construed"], and both words must be given meaning, it is clear that the parties intended the provision to cover contract-related tort and unjust enrichment claims." *Id.* at 466.

GMS's Agreement with Greer contains the same phrase, that the Agreement "shall be governed by and construed in accordance" with Virginia law. JA1412. The Agreement created and defined the sales agent relationship between GMS and Greer. The Agreement also states that "[a]ny dispute that should arise will be handled accordingly." JA1412. The Virginia Supreme Court found similar language to include contract-related torts in *Paul Business Systems, Inc. v. Canon U.S.A., Inc.*, 240 Va. 337, 397 S.E.2d 804 (1990). In that case, the Virginia Supreme Court interpreted a series of contracts that each contained one of two choice of forum clauses. The clauses at issue stated either (1) "any and all causes of action hereunder by and between the parties hereto shall only have jurisdiction and venue in the local, state or federal courts in the State of New York" or (2) "any and all causes of action whether or not arising under this Agreement by and between the parties hereto shall only be brought in a local, state or federal court situated within the State of New York." *Paul Bus. Sys.,* 240 Va. at 341, 397 S.E.2d at 807. The Virginia Supreme Court held that each of these provisions were broad enough to encompass tort claims, stating, "[W]e find that these tort claims are covered by the 'here-under' language of [the first set of contracts] and certainly by the 'whether or not arising' language of the other two." *Id.* at 434, 397 S.E.2d at 808.

This Court must reach the same conclusion. The Agreement is not limited to contract disputes. Rather, the Agreement states that "**Any dispute that should arise**" between the parties will be handled accordingly. JA1412.

6

On brief, Greer argues in passing that the choice of law provision in the Sales Agent Agreement is not broad enough to encompass VUTSA and VCCA claims. However, Greer fails to devote any real effort to developing his argument. Indeed, he fails to cite to any authority that supports his narrow interpretation of the Agreement. Most egregiously, however, Greer **misquotes the Agreement**. Greer argues that the Agreement "does not cover all claims under the sun; it covers only those **'arising from'** the 2019 agreement itself." App. Br. 16 (emphasis added). However, the Agreement does not use the phrase "arising from," but states that it is to be "governed" and "construed" by Virginia law and that "[a]ny dispute that should arise will be handled accordingly." JA1412. Although GMS believes that the phrase "arising from" would still include contract-related torts, it is nevertheless telling that Greer misquoted the Agreement to reach his unsupported conclusion.

While Greer devotes few words to explaining his interpretation of the terms of the Agreement, he does develop two new arguments that he failed to raise at trial. First, Greer argues that, because his misconduct *started* before he entered into the Agreement, the choice of law provision is ineffective. Second, Greer argues that a contractual choice of law provision only applies when the tort "claims go[] to the existence of the contract itself…." App. Br. 15. Put another way, Greer contends that Virginia will only enforce contractual choice of law provisions if they relate to the "tortious creation" or "tortious termination" of a contract and not to tort claims

that are freestanding from contracts.  App. Br. 16.  Each of Greer's arguments fail, as addressed below.

B.    _Even though Greer argues that his misconduct started before he entered into the Agreement, the District Court did not err in denying Greer's Motion for Judgment as a Matter of Law._

In an effort to overturn the judgment against him, Greer seeks to expand the scope of his Motion for Judgment as a Matter of Law at trial, adding new arguments as to why he should not be subject to Virginia law.  Specifically, Greer argues in the instant appeal that most of his misconduct occurred prior to the execution of the Agreement.  Greer failed to preserve this argument for appeal, which also fails on the merits.

It is well established that a party must "object on the same basis below as he contends is error on appeal" in order to preserve the issue for appeal.  _United States v. Zayyad_, 741 F.3d 452, 459 (4th Cir. 2014).  It is not enough to make a general objection to a ruling; rather, "[t]he basis of the objection must be stated specifically, and 'an objection on one ground does not preserve objections on different grounds.'" _Callahan v. Pac. Cycle, Inc._, 756 F. App'x 216, 223 (4th Cir. 2018) (quoting _Zayyad_ at 459).  Thus, even when a party bases an appeal on the same issue and same rule on appeal as it did at trial, the party "may still waive his claim if he fashioned his argument differently."  _Zayyad_ at 459.

In his Motion for Judgment as a Matter of Law, Greer never objected to the court applying Virginia choice of law to actions he took before he entered into the

Agreement.  In fact, Greer argued the opposite.  In his Motion for Judgment as a Matter of Law, Greer's counsel stated, "Virginia law applies to my clients' conduct only in terms of either for Mr. Greer the period that he was an employee, or independent sales agents for the period that that were independent sales agents, but it only applies to their duties and obligations under those agreements."  JA1018, lines 1-5.  Greer was only an employee **before he entered into the Agreement**.  *See, e.g.* JA1414, JA1415-1416.  Once he entered into the Agreement, Greer lost his employee status and became an independent sale agent.  *See* Agreement at JA1409 ("[Greer] expressly acknowledges that [he] will be acting as an independent contractor and not as an employee").  Whether counsel made this statement inadvertently or not, Greer failed to bring to the District Court's attention the issue to which he now complains of for the first time on appeal.

Failure to preserve an error at trial can only be reversed if there was "plain error."  *United States v. Massenburg*, 564 F.3d 337, 342 (4th Cir. 2009).  "To reverse for plain error, [the Court] must '(1) identify an error; (2) which is plain; (3) which affects substantial rights; and (4) which seriously affects the fairness, integrity or public reputation of judicial proceedings.'"  *United States v. Pratt*, 239 F.3d 640, 644 (4th Cir. 2001) (quoting *United States v. Moore*, 11 F.3d 475, 481 (4th Cir. 1993)).

Here, Greer cannot satisfy even the first prong of the plain error test because there is no error.  With respect to the VCCA claim, it is undisputed that a violation

of that statute occurred *after* Greer entered into the Agreement. On brief, Greer concedes that "his deletion of GMS's information" upon which the claim was based occurred "in April 2019." App. Br. 16. Nevertheless, Greer argues, without any citation to the record, that "the vast majority of that deleted information was obtained years before the 2019 agreement was signed, and it was not deleted because of Greer's position as sales agent." App. Br. 16. Further, Greer suggests that the VCCA claim is tied only to his breach of fiduciary duty while he was an employee. App. Br. 16-17.

Contrary to Greer's self-serving statements on appeal, his use of the laptop and tablet at issue in 2019 was solely by virtue of his status as a sales agent of GMS. JA270-271. Greer transitioned from employee to independent sales agent by virtue of the Agreement, which is dated and executed by Greer on January 21, 2019. JA1409. Greer's longtime status as being a GMS employee ended the moment he executed that Agreement, and the terms of Greer's relationship with GMS as sales agent was governed by the Agreement from that time forward. That included Greer's continued use of the GMS laptop and tablet. Had he ended all ties with GMS at that time – instead of merely moving to sales agent status – Greer would have lost the use of the laptop and tablet and all files contained thereon. Nevertheless, as sales agent, GMS granted him continued use of the devices. Later, in April 2019, GMS terminated Greer after finding out that he started a competing company without

10

GMS's knowledge and was soliciting GMS's other sales agents to sell for his competing company. GMS, by counsel, sent Greer a letter notifying Greer of his duty to preserve evidence and requesting that he return the work laptop and tablet. JA270-271. Despite this, Greer downloaded a "file shredder" and deleted GMS's documents from the computer and refused to provide the correct password to the tablet.[1] JA1149, line 1 to JA1152, line 16; *see also* Order and Memorandum Opinion of the Honorable Roderick C. Young, U.S. District Court Judge at JA518-538.

There is ample evidence to support the jury's finding that Greer violated the VCCA, and the trial court did not err in holding that his conduct in April 2019 was subject to the parties' choice of law provision in the Agreement. The Court should affirm the verdict below.

With respect to GMS's VUTSA claim, Greer argues that "[b]y the time Greer signed the [Agreement], he was no longer a GMS employee, and had already engaged in the majority of the … tortious conduct for years." App. Br. 14. Of course, Greer does not state on brief – because he cannot – that he did not continue to engage in the tortious conduct after he became a sales agent in January 2019. This fact alone is fatal to Greer's appeal. Even accepting as true Greer's argument that

---

[1] In addition to eliciting testimony at trial regarding Greer's misconduct, GMS filed a Motion for Sanctions based upon Greer's deletion of data. The District Court granted the Motion and gave the jury an instruction regarding the inferences that it could make based upon the District Court's finding of spoliation of evidence. *See* JA29, ECF No. 249 and JA1359.

he could not be liable for tortious conduct under Virginia law for acts that he committed before signing the Agreement, that does not preclude a finding that he violated VUTSA *after* signing the Agreement.  For Greer to have preserved his argument, he would have had to ask for a jury instruction limiting the period in which he could be liable under VUTSA to only the time after he executed the Agreement – but that is not what Greer requested.  Instead, he moved for judgment as a matter of law on the claim in its entirety.  Having made such an objection, the District Court did not err in denying Greer's Motion for Judgment as a Matter of Law because there was evidence that Greer violated VUTSA while subject to the Virginia choice of law provision.

This Court "must affirm the district court's denial of a Rule 50 motion 'if reasonable minds could differ regarding' the findings implicit in the jury's verdict." *Ferguson v. Nat'l Freight Inc.*, 692 F. App'x 756, 758 (4th Cir. 2017) (quoting *Bresler v. Wilmington Trust Co.*, 855 F.3d 178, 196 (4th Cir. 2017)).  Here, it would not have been appropriate for the Court to make the factual determination of "if" and "when" the VUTSA violation occurred.  That right to make that determination is reserved solely for the jury, which found Greer liable.

Greer's failure to develop the argument below also raises another issue that requires this Court to affirm the District Court's judgment.  To find plain error, the Court would have to have a record upon which it could find that the jury *actually*

12

*found* Greer violated VUTSA prior to entering into the Agreement. *Gentry v. E. W. Partners Club Mgmt. Co.*, 816 F.3d 228, 237 (4th Cir. 2016) ("'The mere possibility that the error affected the outcome of the trial' does not suffice" in establishing plain error (quoting *United States v. McDonnell*, 792 F.3d 478, 502 (4th Cir. 2015)).

It is impossible to make such a finding on the present record, given the Special Verdict Form employed in this case. Notably, "'[w]here there is a view of the case that makes the jury's answers . . . consistent, they must be resolved that way'" and the appellate Court "must view the evidence 'in the light most favorable to upholding the jury's decision by a finding of consistency.'" *Phillips v. Pneumo Abex, LLC*, 713 F. App'x 191, 194-95 (4th Cir. 2017) (quoting *Atlantic & Gulf Stevedores, Inc. v. Ellerman Lines, Ltd.,* 369 U.S. 355, 364 (1962), *Ellis v. Weasler Eng'g, Inc.*, 258 F.3d 326, 343 (5th Cir. 2001)). As it relates to VUTSA, the Special Verdict Form returned by the jury shows only that they found Greer violated VUTSA – not when the violation took place:

Question No. 33

Did GMS Industrial Supply, Inc. prove by a preponderance of the evidence that it owned and possessed trade secret information, as defined in the Virginia Uniform Trade Secrets Act?

Yes  X      No ____

***

13

<u>Question No. 35</u>

Did GMS Industrial Supply, Inc. prove by a preponderance of the evidence that **Westly Greer** misappropriated GMS Industrial Supply, Inc.'s trade secret information?

Yes <u> X </u>     No <u>    </u>

JA1312.

It is entirely possible that the jury found that Greer violated VUTSA only *after* he signed the Agreement. Based on the record before the Court, there can be no finding of plain error. Indeed, GMS requested a significant monetary award for its VUTSA claim, yet the jury awarded GMS no damages. The record does not reveal why the jury did not award damages for Greer's violation of VUTSA, but the fact that they did not award GMS any damages means that any error is necessarily harmless. *See* 28 USC § 2111 ("On the hearing of any appeal . . ., the court shall give judgment after an examination of the record without regard to errors or defects which do not affect the substantial rights of the parties"); *see generally Blanton v. Great Atl. & Pac. Tea Co*., 61 F.2d 427, 429 (5th Cir. 1932) ("Since the jury found no liability whatever, it is manifest that any inaccuracy affecting only the amount of damages was harmless). In any event, the record does not contain sufficient information on why the jury reached its finding. This Court should affirm the judgment below.

14

C.      _All contract-related torts are subject to an appropriate choice of law_
        _provision and not just torts that go to the existence of the contract itself._

Greer failed to preserve his argument that a contractual choice of law provision can only apply to torts that "go[] to the existence of the contract itself…." App. Br. 15. Indeed, Greer argued **to the contrary in his Motion for Judgment as a Matter of Law.** Even if Greer had preserved his argument, though, he misinterprets the law.

In his Motion for Judgment as a Matter of Law, Greer's counsel conceded that "there are other agreements, not in this case, where parties can define that **any dispute between them** is governed by Virginia law." JA1020 (emphasis added). In other words, at trial, Greer conceded that the parties can dictate through contract the choice of law for **any dispute between them**, but he did not argue that a choice of law provision cannot reach a tort that is "distinct" from the contract. App. Br. 15. Accordingly, Greer cannot approbate and reprobate.

Even if Greer had raised the issue below, his argument is without merit. Greer does not cite any authority in which a court has held that Virginia law only enforces choice of law provisions for torts that go to the existence of the contract itself. Instead, Greer references several cases that applied a contractual choice of law provision for claims for "tortious creation" or "tortious termination" of the contract and attempts to extrapolate those holdings into a rule that limits Virginia's express

rule enforcing the parties' choice of law provisions as written. There is no basis in law for Greer's argument.

Greer fails to acknowledge that courts in Virginia have held that if the contractual language is broad enough to encompass contract-related torts – whether they go to the existence of the contract or not – the torts will be subject to the agreed upon choice of law. *See e.g. Run Them Sweet, LLC v. CPA Glob. Ltd.*, 224 F. Supp. 3d 462, 466-67 (E.D. Va. 2016) (unjust enrichment and statutory violations of California's unfair or fraudulent business practices statute); *Weiler v. Arrowpoint Corp.*, No. 1:10cv157, 2010 U.S. Dist. LEXIS 46163, at *12 (E.D. Va. May 11, 2010) (business conspiracy and unfair trade practices); *Corinthian Mortg. Corp v. Choicepoint Precision Mktg., LLC*, 2008 U.S. Dist. LEXIS 28129, at *13 (E.D. Va. Apr. 4, 2008) (certain claims under Massachusetts's Unfair Trade Practices Act subject to choice of law provision as they are "embroidered contract claims or [MUTPA] claims essentially sounding in contract").

Notably, the Virginia Supreme Court has not limited the application of choice of law provisions as Greer implores the Court to do. Indeed, in *Paul Business Systems, Inc. v. Canon U.S.A., Inc.*, 240 Va. 337. 397 S.E.2d 804 (1990), the Virginia Supreme Court held that the parties' contractual choice of forum clause was broad enough to encompass a claim under Virginia's business conspiracy statute (Va. Code § 18.2-499). Although that case involved an issue of the choice of forum – and not

choice of law – the Court noted that it treats such provisions the same. *Id.* at 34, 397 S.E.2d at 807 (noting that its enforcement of a choice of forum clause was "consistent with the rule in Virginia, established in a similar context, that where parties to a contract have expressly declared that the agreement shall be construed as made with reference to the law of a particular jurisdiction, we will recognize such agreement and enforce it, applying the law of the stipulated jurisdiction").

Although Greer fails to acknowledge the cases cited above, he instead cites to *Colgan Air, Inc. v. Raytheon Aircraft Co.*, 507 F.3d 270 (275) (4th Cir. 2007) as an example of the Court declining to apply a contractual choice of law provision to a tort claim that is "distinct from the contract." App. Br. 15. While the Court in *Colgan* did hold that a tort claim was subject to a *lex loci delicti* analysis, despite the apparent existence of a choice of law provision, the Court did not explain its reason for doing so. In the opinion, the Court did not engage in any analysis of the contractual choice of law provision at issue at all -- or even recite the language of the choice of law provision. Simply put, *Colgan* is of little probative value and it does not contain a prohibition on applying a contractual choice of law provision to torts that are "distinct" from the agreement.

As discussed *supra,* analysis of a choice of law provision is dependent upon the contractual language – without knowing the language of the agreement in *Colgan*, it is impossible to discern the Court's reasons for not applying the

contractual choice of law provision to a tort claim.  Indeed, it is entirely possible that the express choice of law agreement in *Colgan* was drafted so narrowly so as to preclude contract-related torts.  It is also possible that the parties never argued that the torts were subject to the choice of law provision or raised the issue too late in the trial court and waived the argument.  *See generally GreCon Dimter, Inc. v. Horner Flooring Co*., 114 F. App'x 64, 66 (4th Cir. 2004).  Regardless of why the Court reached its conclusion, *Colgan* does not create a rule that limits Virginia's acceptance and enforcement of choice of law provisions for all contract-related torts.

D.    <u>Even if this Court applies the doctrine of</u> lex loci delicti<u>, the choice of law was appropriate.</u>

If this Court should apply *lex loci delicti* despite the existence of a contractual choice of law provision in the Agreement, Virginia law would still govern the matter. This case was a complex civil lawsuit involving multiple defendants and allegations of misconduct across multiple states.  Under such circumstances, it is likely that the Supreme Court of Virginia would find that the "place of the wrong" for the purposes of a *lex loci delicti* analysis is the "state where the plaintiff is injured as a result of the allegedly tortious content."  *See Gilmore v. Jones*, 370 F. Supp. 3d 630, 666 (W.D. Va. 2019).  In this case, Plaintiff is a Virginia company and the injury occurred here.

E.    *If there was error, the remedy should be to remand the case for retrial on the issues of trade secret misappropriation and cybercrimes under Colorado law, not dismissal.*

Even if the Court finds that it was error for the District Court to have denied the Motion for Judgment as a Matter of Law, the appropriate remedy is to remand the case for retrial of the trade secret and cybercrime claims under Colorado law. The jury, having been instructed on the elements of claims under VUTSA and VCCA, found that Greer violated both statutes. If there was an issue of the choice of law, that issue can be corrected on remand by applying Colorado law, and Greer should not be let off the hook for his misconduct.

GMS, as the prevailing party on Greer's Motion for Judgment as a Matter of Law, may be entitled to a new trial under FRCP 50(E) ("If the court denies the motion for judgment as a matter of law, the prevailing party may, as appellee, assert grounds entitling it to a new trial should the appellate court conclude that the trial court erred in denying the motion.") Under the rule, "[i]f the appellate court reverses the judgment, it may order a new trial, direct the trial court to determine whether a new trial should be granted, or direct the entry of judgment." *Id.* In this case, the appropriate remedy is a new trial under the proper choice of law.

In cases where plaintiffs have pled claims under the wrong choice of law, trial courts can grant the plaintiffs leave to amend their complaints to allege claims under the applicable law. *See, e.g. Run Them Sweet, LLC*, 224 F. Supp. 3d at 469 (granting

leave to amend after making a choice of law determination, because "[l]eave to amend should be freely given, and denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would [be] futile."). On remand, leave to amend to add Colorado claims would be appropriate.

Greer was not diligent in raising his choice of law argument.[2] Greer first raised the issue of choice of law in a Rule 11 sanctions motion that he filed over two years after GMS initiated this lawsuit. GMS filed its initial Complaint on June 20, 2019. JA9. Greer filed his Motion for Sanctions on July 8, 2021. JA25. Even then, Greer only challenged the application of VUTSA and not the other claims, such as VCCA, in his Motion for Sanctions.[3] JA458-459. In its Response to the Motion for Sanctions, GMS highlighted the choice of law provision that controls the analysis, but, in an abundance of caution, raised the possibility of amending its claims if the Court did not find that VUTSA applied. JA495. In other words, GMS was diligent in seeking to remedy any choice of law issues, should the Court find that a choice of

---

[2] Greer misrepresents to the Court the timeliness of his pursuit of the choice of law argument. Greer states falsely that "…he consistently argued the same in virtually every stage of this case" and that "GMS had been on notice for years that it needed to provide evidence of Virginia-based conduct." In reality, Greer did not raise the issue until two years into the case and (at the time) trial was only roughly three months away. *See* JA28 (Docket Entry 245).

[3] Greer did not raise the issue of choice of law as to the VCCA until he later objected to jury instructions.

law issue exists.  Even when Greer raised his choice of law issues at trial, he failed to raise many of the arguments that he now makes on appeal.

There was no bad faith on behalf of GMS in asserting Virginia choice of law. Nor is there prejudice to Greer, given his delay in raising the argument and failure to fully address his issues with the choice of law before the District Court.  On the contrary, GMS has been prejudiced by Greer's dilatory arguments on the issue.

Finally, remanding for a new trial on the trade secret and cybercrime claims would not be futile.  VUTSA is Virginia's enactment of a uniform Act that has been adopted in numerous jurisdictions, including Colorado.  Colo. Rev. Stat. § 7-74-102 *et seq*.  Thus, GMS can pursue a claim under that state's statute.  Although the VCCA is not a uniform act, Colorado has its own cybercrime statute.  *See* Colo. Rev. Stat. § 18-5.5-102.  Greer argues on brief that the Colorado cybercrime statute does not create a civil cause of action, but that does not mean a new trial on the cybercrimes issue would be futile.  Colorado courts have allowed claims to proceed under a negligence per se cause of action using Colorado's computer crime act as the predicate public safety law. *See e.g. Integrity Applied Sci., Inc. v. Clearpoint Chems. LLC,* 2020 U.S. Dist. LEXIS 260199 at *10-11 (D. Colo. 2020).  In other words, while Colorado's cybercrime statute may not provide a direct cause of action, the conduct prohibited by the statute can nevertheless be civilly actionable under a negligence per se theory.

## **CONCLUSION**

For the foregoing reasons, the Court should affirm the judgment below and grant GMS its costs incurred in defending this appeal.  In the alternative, GMS requests that the Court remand the matter for retrial of the trade secret and cybercrime claims under any appropriate law.

/s/ William A. Lascara
William A. Lascara, Esq., VSB #23118
Thomas S. Berkley, Esq., VSB #40124
Jeffrey D. Wilson, Esq., VSB #75734
PENDER & COWARD, P.C.
222 Central Park Avenue #400
Virginia Beach, VA 23462
(757) 502-7326 Direct Dial
(757) 502-7372 Facsimile
wlascara@pendercoward.com
tberkley@pendercoward.com
jwilson@pendercoward.com

*Counsel for Plaintiff,*
*GMS Industrial Supply, Inc.*

## <u>CERTIFICATE OF COMPLIANCE</u>

1.    This brief complies with type-volume limits because, excluding the parts of the document exempted by Fed. R. App. P. 32(f) (cover page, disclosure statement, table of contents, table of citations, statement regarding oral argument, signature block, certificates of counsel, addendum, attachments):

   [ X ] this brief contains [*5,558*] words.

   [    ] this brief uses a monospaced type and contains [*state the number of*] lines of text.

2.    This brief complies with the typeface and type style requirements because:

   [ X ] this brief has been prepared in a proportionally spaced typeface using [*Microsoft Word 365*] in [*14pt Times New Roman*]; *or*

   [    ] this brief has been prepared in a monospaced typeface using [*state name and version of word processing program*] with [*state number of characters per inch and name of type style*].

Dated: <u>February 21, 2023</u>          <u>/s/ William A. Lascara</u>
                                          *Counsel for Appellee*

## <u>CERTIFICATE OF FILING AND SERVICE</u>

I hereby certify that on this 21st day of February, 2023, I caused this Brief of

Appellee to be filed electronically with the Clerk of the Court using the CM/ECF

System, which will send notice of such filing to all registered counsel as CM/ECF

users.

/s/ William A. Lascara
*Counsel for Appellee*