No. 22-2090

In the

# United States Court of Appeals
## For the Fourth Circuit

———————————

GMS INDUSTRIAL SUPPLY, INC.,

*Plaintiff-Appellee,*

v.

WESTLY L. GREER,

*Defendant-Appellant,*

and

G&S SUPPLY, LLC; SABRINA GREER; GREER GROUP, LLC; GREGORY K. SPIRES; COUNTRY ROADS, LLC; THOMAS HAYES; MIKE WELTON; WARTECH INDUSTRIES, LLC; HMC SUPPLY, LLC,

*Defendants.*

———————————

On Appeal from the United States District Court
for the Eastern District of Virginia at Norfolk
Case No. 2:19-cv-00324
The Honorable Roderick C. Young, District Judge
The Honorable Lawrence R. Leonard, Magistrate Judge

———————————

**APPELLANT'S REPLY BRIEF**

———————————

Robert W. McFarland
V. Kathleen Dougherty
Jeanne E. Noonan
MCGUIREWOODS LLP
9000 World Trade Center
101 West Main Street
Norfolk, VA 23510
T: (757) 640-3716

March 14, 2023

## **TABLE OF CONTENTS**

**Page**

ARGUMENT ..........................................................................................1

I.    GMS Ignores the Application of the *Lex Loci Delecti* Doctrine....................2

II.    The Choice-of-Law Provision in Greer's Independent Sales Agent Agreement, in Effect for Less Than Three Months, Does Not Govern the Tort Claims At Issue. ................................................................................4

    A.    The Plain Language of the Choice-of-Law Provision Does Not Cover These VUTSA and VCCA Claims. ...........................................4

    B.    VUTSA and VCCA Claims Are Not "Contract-Related" Torts........10

III.   Greer Properly Preserved the Issue for Appeal. ...........................................16

IV.   A Remand for Retrial is Not Warranted; This Court Should Direct The District Court To Enter Judgment In Greer's Favor. ...........................22

CONCLUSION ....................................................................................25

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

### Cases

*BASF Plant Sci., LP v. Cmmw. Sci. and Indus. Research Org.*,
No. 2:17-cv-503, 2019 WL 2017541 (E.D. Va. May 7, 2019) ..........................15

*Callahan v. P. Cycle, Inc.*,
756 F. App'x 216 (4th Cir. 2018) ......................................................................20

*Colgan Air, Inc. v. Raytheon Aircraft Co.*,
507 F.3d 270 (4th Cir. 2007) ...........................................................................5, 9

*Corinthian Mortg. Corp. v. ChoicePoint Precision Mktg., LLC*,
No. 1:07-cv-832, 2008 U.S. Dist. LEXIS 28129
(E.D. Va. Apr. 4, 2008).................................................................................12, 13

*Freedman v. Am. Online, Inc.*,
325 F. Supp. 2d 638 (E.D. Va. 2004) ...........................................................10, 15

*Gen. Assur. of Am., Inc. v. Overby-Seawell Co.*,
893 F. Supp. 2d 761 (E.D. Va. 2012), *aff'd*, 533 F. App'x 200
(4th Cir. 2013)....................................................................................................3

*Gilmore v. Jones*,
370 F. Supp. 3d 630 (W.D. Va. 2019) .................................................................3

*Grayson O Co. v. Agadir Int'l LLC*,
856 F.3d 307 (4th Cir. 2017) ...........................................................................21

*Hitachi Credit Am. Corp. v. Signet Bank*,
166 F.3d 614 (4th Cir. 1999) .........................................................................5, 11

*ITCO Corp. v. Michelin Tire Corp., Com. Div.*,
722 F.2d 42 (4th Cir. 1983), *on reh'g*, 742 F.2d 170 (4th Cir. 1984) ................9

*LTD Mgmt. Co., LLC v. Holiday Hospitality Franchising, Inc.*
No. 2:07-cv-530, 2008 WL 7281926 (E.D. Va. Mar. 11, 2008) .........................9

*Mayfield v. Natl. Ass'n for Stock Car Auto Racing, Inc.*,
674 F.3d 369 (4th Cir. 2012) ...........................................................................21

*McMillan v. McMillan*,
  253 S.E.2d 662 (Va. 1979) ........................................................14, 21

*Milton v. IIT Research Inst.*,
  138 F.3d 519 (4th Cir. 1998) ...............................................................3

*MSC Safety Sols., LLC v. Trivent Safety Consulting, LLC*,
  No. 1:19-cv-938, 2019 WL 5189004 (D. Colo. Oct. 15, 2019) ........................23

*Nelson v. Adams USA, Inc.*,
  529 U.S. 460 (2000)........................................................................17, 19

*Paul Bus. Sys., Inc. v. Canon U.S.A., Inc.*,
  397 S.E.2d 804 (Va. 1990) ...............................................................5, 7

*Pyott-Boone Elecs. Inc. v. IRR Tr. for Donald L. Fetterolf Dated
  December 9, 1997*,
  918 F. Supp. 2d 532 (W.D. Va. 2013) ................................................9

*Quillen v. Int'l Playtex, Inc.*,
  789 F.2d 1041 (4th Cir. 1986) .............................................................3

*Run Them Sweet, LLC v. CPA Glob. Ltd.*,
  224 F. Supp. 3d 462 (E.D. Va. 2016) ................................................8

*Sardis v. Overhead Door Corp.*,
  10 F.4th 268 (4th Cir. 2021) .............................................................22, 24

*Ulloa v. QSP, Inc.*,
  624 S.E.2d 43 (Va. 2006) .................................................................13

*In re Under Seal*,
  749 F.3d 276 (4th Cir. 2014) .............................................................19

*United States v. Boyd*,
  5 F.4th 550 (4th Cir. 2021) ...............................................................19

*United States v. Zayyad*,
  741 F.3d 452 (4th Cir. 2014) .............................................................20

*Volvo Constr. Equip. N. Am., Inc. v. CLM Equip. Co.*,
  386 F.3d 581 (4th Cir. 2004) .............................................................19

*Weiler v. Arrowpoint Corp.*,
    No. 1:10-cv-157, 2010 WL 1946317 (E.D. Va. May 11, 2010) ........................12

*X-IT Prods., LLC v. Walter Kidde Portable Equip., Inc.*,
    155 F. Supp. 2d 577 (E.D. Va. 2001) ............................................................4, 13

**Statutes**

Computer Fraud and Abuse Act, 18 U.S.C. § 1030, *et seq.* .....................................23

Colo. Rev. Stat. § 7-74-107 ...................................................................................23

Colo. Rev. Stat. § 18-5.5-102 ................................................................................23

**Rules**

Fed. R. App. P. 28.................................................................................................21

Fed. R. Civ. P. 50(e).............................................................................................22

**Other Authorities**

Peter Hay, et al., *Conflict of Laws* § 18.10 (5th ed. 2010)........................................9

iv

## **ARGUMENT**

GMS Industrial Supply, Inc.'s ("GMS") Brief overlooks a singular, simple principle: Virginia tort law, including tort claims brought pursuant to state statute, only applies to conduct within the Commonwealth. It does not apply to Greer's conduct in Colorado, where he lived and worked. GMS failed to present any evidence that Greer engaged in tortious conduct in Virginia. Submitting GMS's Virginia Uniform Trade Secrets Act ("VUTSA") claim (Count V) and Virginia Computer Crimes Act ("VCCA") claim (Count VIII) to the jury was, therefore, legal error.

GMS tries to present this issue as one that is seemingly complex and tied to a contractual choice-of-law provision that, by its plain wording, does not apply to the VUTSA and VCCA claims. Despite this, GMS asserts that these claims are "contract-related," notwithstanding the absence of any supporting legal authority. In fact, there is no reason to depart from the well-settled *lex loci delicti* doctrine, and the district court erred when it submitted these claims to the jury.

Recognizing that its legal arguments fall short, GMS spends much of its Brief making conclusory assertions of procedural deficiencies with Greer's appeal. These center on the contention that Greer has improperly raised new arguments. But GMS has long been on notice of Greer's position that Virginia tort law requires in-state conduct, and that GMS's Virginia tort claims are inapplicable to Greer's out-of-state

conduct. And a choice-of-law provision from a contract in effect for less than three months is not sufficient support for these Virginia tort claims, as GMS has argued both here and before the district court. Greer raises no new issues or arguments: he placed both GMS and the district court on notice of the substance of the issue, and made arguments below that the contractual choice-of-law provisions did not apply to these tort claims. Despite GMS's efforts to twist isolated statements from the arguments on the Motion for Judgment as a Matter of Law, there are no procedural defects or waiver issues present.

GMS's arguments attempt to obscure what is a straightforward legal issue. The doctrine of *lex loci delecti* applies, and the independent tort claims at issue do not fall within any contractual choice-of-law provision. As Greer's alleged tortious conduct occurred outside Virginia, GMS's evidence did not support the verdict on the VUTSA and VCCA claims. Thus, this Court should reverse and direct the entry of judgment in Greer's favor on these two (2) claims.

## I.    GMS Ignores the Application of the *Lex Loci Delecti* Doctrine.

Buried on page 18 of GMS's Brief is a singular paragraph in which GMS attempts to address the applicability of the *lex loci delecti* doctrine. The sole case GMS cites is unavailing: well-settled Virginia law dictates that the place of the wrong determines which state's substantive law applies (in this case, Colorado). That precedent cannot be disturbed by one Western District of Virginia district

court's prediction that the Supreme Court of Virginia, "if applying *lex loci delicti* in a multi-defendant, multi-state Internet tort case, would define 'the place of the wrong' as the state where the plaintiff is injured as a result of the allegedly tortious content." *Gilmore v. Jones*, 370 F. Supp. 3d 630, 664 (W.D. Va. 2019). Unlike *Gilmore*, this case does not involve claims for defamation, or multi-defendants' Internet conduct, or "thorny questions about the nature of online publication," and therefore that district court's reasoning is inapposite. *See id.* at 665.

This Court has made clear that "when Virginia residents are victims of out-of-state torts, the Virginia courts routinely apply the law of other states, even though the physical pain or economic impact caused by the tort injury may be experienced by the Virginia plaintiffs within the boundaries of the Commonwealth." *Milton v. IIT Research Inst.*, 138 F.3d 519, 522 (4th Cir. 1998). "Put another way, "[t]he place of the wrong . . . is defined as the place where the last event necessary to make an act liable for an alleged tort takes place." *Gen. Assur. of Am., Inc. v. Overby-Seawell Co.*, 893 F. Supp. 2d 761, 778 (E.D. Va. 2012), *aff'd*, 533 F. App'x 200 (4th Cir. 2013) (unpub.) (quoting *Quillen v. Int'l Playtex, Inc.*, 789 F.2d 1041, 1044 (4th Cir. 1986)). GMS does not dispute that Greer lived and worked in Colorado, nor does it dispute that any allegedly tortious conduct occurred in Colorado. Indeed, nowhere in GMS's Brief does it dispute that Greer's conduct occurred outside of Virginia. As a result, the district court should have refused to apply Virginia law to Greer's

out-of-state conduct. *See, e.g.*, *X-IT Prods., LLC v. Walter Kidde Portable Equip., Inc.*, 155 F. Supp. 2d 577, 640 (E.D. Va. 2001) (refusing to apply Virginia law to a misappropriation of trade secrets claim relating to out-of-state conduct).

## II. The Choice-of-Law Provision in Greer's Independent Sales Agent Agreement, in Effect for Less Than Three Months, Does Not Govern the Tort Claims At Issue.

Tellingly, GMS takes the position that this is not a *lex loci delecti* issue, but one governed by the choice-of-law provision in Greer's Independent Sales Agent Agreement (the "Agreement"). *See* Br. at 2–7, 15–18. GMS's various arguments concerning the choice-of-law provision are smoke and mirrors, designed to distract from the well-settled doctrine of *lex loci delecti*. First, the plain language of the Agreement does not cover the statutory tort claims at issue here (nor does Greer misquote the Agreement as is oft-repeated by GMS). These two claims are not contract-related, and did not arise under the Agreement. Second, the legal authority relied upon by GMS is either readily distinguishable, or tends to reinforce the fact that only in limited circumstances do tort claims fall within a choice-of-law provision. As such, the choice-of-law provision is inapplicable here, and the district court erred in submitting the VCCA and VUTSA claims to the jury.

### A. The Plain Language of the Choice-of-Law Provision Does Not Cover These VUTSA and VCCA Claims.

There is no dispute that the Agreement was effective January 21, 2019, and Greer was terminated on April 3, 2019. JA1409, JA119-120. Prior to January 21,

4

2019, Greer's employment contract contained no choice-of-law provision. JA1413-

1416. In 2019, for just over a two-month period, Greer agreed as follows:

> This Agreement shall be governed by and construed in accordance with the laws of the State of Virginia without giving effect to any choice of law provisions. Any dispute that should arise will be handled accordingly. Both parties agree that the exclusive venue for any action, demand, claim or counterclaim relating to or arising from this Agreement, shall be in the state or federal courts located in Virginia Beach, Virginia and that such courts shall have personal jurisdiction over the parties to this Agreement.

JA1412, JA312. However, the VUTSA and VCCA claims do not fit within the plain

language of this choice-of-law provision. *See Hitachi Credit Am. Corp. v. Signet*

*Bank*, 166 F.3d 614, 628 (4th Cir. 1999) (explaining that where "a choice of law

clause in the contract is sufficiently broad to encompass contract-related tort claims

*such as fraudulent inducement*, other courts have honored the intent of the parties to

choose the applicable law.") (emphasis added); *see also Colgan Air, Inc. v. Raytheon*

*Aircraft Co.*, 507 F.3d 270, 275 (4th Cir. 2007) (applying choice-of-law provision

to contract claims, and the rule of *lex loci delecti* to tort actions).

GMS's reliance on *Paul Business Systems, Inc. v. Canon U.S.A., Inc.* is

misplaced. In that case, the majority opinion from the Supreme Court of Virginia

found that two separate jurisdictional provisions contained in multiple contracts

covered certain tort claims because the majority concluded these claims "flow[ed]

directly from the several dealership agreements." *Paul Bus. Sys., Inc. v. Canon*

*U.S.A., Inc.*, 397 S.E.2d 804, 808 (Va. 1990). That first provision, however, stated,

"*that any and all causes of action hereunder by and between the parties hereto shall only have jurisdiction and venue in the local, state or federal courts in the State of New York*," and in the second provision, the parties agreed "that any and all causes of action *whether or not arising under this Agreement* by and between the parties hereto shall only *be brought* in a local, state or federal court situated within the State of New York." *Id.* at 806–07 (emphasis in original).

The choice-of-law and venue provisions here are far narrower. Read as a whole, they state that "[t]his Agreement shall be governed by and construed in accordance with the laws of the State of Virginia," that any "dispute that should arise will be handled accordingly," *and* that the parties agree that "the exclusive venue for any action, demand, claim or counterclaim *relating to or arising from this Agreement*, shall be in the state or federal courts located in Virginia Beach, Virginia and that such courts shall have personal jurisdiction over the parties to this Agreement." JA1412, JA312 (emphasis added). Unlike the provisions in *Paul Business Systems*, the second of which explicitly expanded the scope of New York jurisdiction to claims not arising from that contract, the provision in question pertains only to Agreement-governed disputes. The limiting language in this choice-of-law provision makes clear that it applies only to claims relating to or arising from the Agreement.

The concurring opinion in *Paul Business Systems* provides insight on how the Supreme Court of Virginia would review the choice-of-law provision in this Agreement.  There, three justices joined the majority, but indicated they did "not subscribe to all the reasoning contained in the majority opinion" because the agreements that contained the language "whether or not arising under this Agreement" were dispositive and ensured that the tort claims were encompassed by the choice-of-law provision.  397 S.E.2d at 809 (Russell, J.; Whiting J.; and Lacy, J. concurring).  The concurrence further discussed that under the choice-of-law provision in other agreements, the parties "only contracted to litigate *ex contractu* causes of action in New York.  Tortious and criminal conduct gives rise to causes of action *ex delicto*, which arise from wrongs entirely outside the contracts."  *Id.*  Thus, the concurrence concluded that the majority's opinion that the tort claims "arose under" the contract "strain[ed]" reasoning and there could be an "unfortunate effect of such a holding upon future cases."  *Id.*

Here, however, the issue is less complex than what the Supreme Court of Virginia addressed in *Paul Business Systems*:  the choice-of-law provision cannot be read to encompass tort claims because of the limiting language that the *Agreement* is governed and construed by Virginia law, and that "the exclusive venue for any action, demand, claim or counterclaim *relating to or arising from this Agreement*, shall be in the state or federal courts located in Virginia Beach, Virginia and that

such courts shall have personal jurisdiction over the parties to this Agreement." JA1412, JA312 (emphasis added).

GMS also relies heavily on *Run Them Sweet, LLC v. CPA Glob. Ltd.*, 224 F. Supp. 3d 462, 466 (E.D. Va. 2016), for the premise that the use of the terms "governed by and construed in accordance with" extends a choice-of-law provision to contract-related tort claims. Br. at 5. GMS then argues that there is no limitation that contract-related torts go to the existence of the contract itself. Br. at 16. In *Run Them Sweet*, however, the district court found that the two tort claims at issue (unjust enrichment and violation of California's unfair business practices statute) were "essentially identical" to the breach of contract claim, as they challenged the agreement's conditions and the charges and invoices for services under the contract. 224 F. Supp. 3d at 467–68. And, critically, the choice-of-law provision stated that the "conditions [of the Agreement] and any contract made under them shall be governed by and construed in accordance with the laws of the Commonwealth of Virginia." *Id.* at 464. Accepting the district court's holdings in *Run Them Sweet*, the scenario there—essentially duplicative tort claims arising out of a contractual relationship—is wholly distinct from this action, where GMS sued Greer for conduct that occurred before the Agreement was in effect, and after his termination.

Furthermore, *Run Them Sweet* appears to be one of only a few district court cases that construed choice-of-law provisions encompassing "contract-related" tort

claims more broadly than this Court.  *See id.*; *see also Pyott-Boone Elecs. Inc. v. IRR Tr. for Donald L. Fetterolf Dated December 9, 1997*, 918 F. Supp. 2d 532, 544 (W.D. Va. 2013).   In fact, in *Pyott-Boone*, the district court described the issue as "unsettled," and stated that one writer has noted "a majority of courts have held that choice-of-law provisions do not encompass related torts, but that many courts have reached the opposite conclusion."  *Id.* at 544–45 (citing Peter Hay, et al., *Conflict of Laws* § 18.10 (5th ed. 2010)).  This Court's decisions follow the majority, as do other on-point district court decisions.

This Court, applying similar North Carolina law, has previously held that where the nature of liability "allegedly to be imposed by the statute is *ex delicto*, not *ex contractu*," a contractual choice-of-law provision does not apply.  *ITCO Corp. v. Michelin Tire Corp., Com. Div.*, 722 F.2d 42, 49 n.11 (4th Cir. 1983), *on reh'g*, 742 F.2d 170 (4th Cir. 1984); *see also Colgan Air, Inc.*, 507 F.3d at 275 (applying Massachusetts law to tort claims notwithstanding the contract's choice-of-law provision).  In *LTD Mgmt. Co., LLC v. Holiday Hospitality Franchising, Inc.*, the district court found that a contract with a choice-of-law provision stating it "shall be governed and construed under, and in accordance with the laws" of Georgia did not encompass contract-related torts, including fraud.  No. 2:07-cv-530, 2008 WL 7281926, at *10 (E.D. Va. Mar. 11, 2008).

A choice-of-law provision "like any other contractual provision, must not be applied more broadly than the parties intended," and "a choice-of-law provision that, by its terms, applies only to the parties' contract or agreement must not be construed to govern the entirety of the parties' relationship and any claim that may arise from that relationship." *Freedman v. Am. Online, Inc.*, 325 F. Supp. 2d 638, 653 & n.34 (E.D. Va. 2004) (collecting cases). Here, by its own terms, and read as a whole, the choice-of-law provision applies only to the Agreement. It does not and could not "govern the entirety" of the relationship between Greer and GMS, particularly when that relationship predates the Agreement. *Id.*

### B.    VUTSA and VCCA Claims Are Not "Contract-Related" Torts.

GMS misconstrues and misinterprets Greer's arguments on appeal. *See* Br. at 15. First, there was no failure to preserve the argument on appeal that a choice-of-law provision cannot reach a tort that is "distinct" from the contract. *See infra* at 16–21. Greer's position was clear in arguing the Motion for Judgment as a Matter of Law: the choice-of-law provision does not reach the tort claims in question. At trial, undersigned counsel discussed the *Hitachi* case, and argued that these "are separate tort claims that are in no way governed by this agreement's choice of law provision." JA1028-1029 (Tr. 41:20–42:6). In other words, the VUTSA and VCCA claims are distinct from the Agreement and that position was squarely before the district court.

10

Second, the limited exception to *lex loci delicti* generally applies to "contract-related torts" as set forth by this Court in *Hitachi*. Opening Br. at 13. Whether the parties *could* enter into a contract defining that Virginia law governs all disputes, including torts, is irrelevant to this appeal because the Agreement's choice-of-law provision only applies to contract disputes. *See* JA1018-1019 (Tr. 31:24–32:9). As raised by GMS, the issue is the language of the Agreement. But the Agreement lacks the broad language necessary to extend the choice-of-law provision to the VUTSA and VCCA claims, which are not "contract-related." In analyzing this issue, it is telling that this Court has previously found that only tort claims going to the existence of the contract, such as fraudulent inducement, qualify, as "contract-related." *See, e.g.*, *Hitachi Credit Am. Corp.*, 166 F.3d at 628; Opening Br. at 14–15.

Even accepting, arguendo, GMS's position that choice-of-law provisions can extend more broadly to all "contract-related" torts (*see* Br. at 15–18), as opposed to torts that go to the existence of the contract, the choice-of-law provision in the Agreement remains inapplicable to the independent tort claims here. As discussed above, the cases cited by GMS are inapposite, as they turn on specific contractual language not present here, tort claims that are identical to breach of contract claims, or different torts and circumstances altogether. *See supra* at 4–8. Conversely, in this case, there is no support for the proposition that the independent, statutory-based

11

VUTSA and VCCA claims are "contract-related." Not only do they not go to the existence of the Agreement, but they are not claims "essentially sounding in contract." *Corinthian Mortg. Corp. v. ChoicePoint Precision Mktg., LLC*, No. 1:07-cv-832, 2008 U.S. Dist. LEXIS 28129, at *7 (E.D. Va. Apr. 4, 2008).

GMS cites to *Weiler v. Arrowpoint Corp.* for the premise that the contractual language is broad enough to apply a Virginia choice-of-law provision to business conspiracy and unfair trade practices claims. *See* Br. at 16. In *Weiler*, although the district court dismissed each of these claims, both claims related to whether the plaintiff was "duped" into signing certain agreements. *See Weiler v. Arrowpoint Corp.*, No. 1:10-cv-157, 2010 WL 1946317, at *8–9 (E.D. Va. May 11, 2010). In other words, *Weiler* is in line with this Court's decisions finding that choice-of-law provisions can encompass claims related to the existence of the contract, like fraudulent inducement. *See* Opening Br. at 13, 15.

During trial, counsel for GMS claimed that *Corinthian Mortgage Corporation v. ChoicePoint Precision Marketing* was helpful to GMS's position because the statutory claims were "still covered by the choice of law provision." JA1026-1027 (Tr. 39:23–40:15). GMS makes the same argument before this Court. *See* Br. at 16 (citing *Corinthian Mortg. Corp.*, 2008 U.S. Dist. LEXIS 28129, at *13). A close reading of *Corinthian Mortgage* belies GMS's arguments. In fact, the district court's analysis in *Corinthian Mortgage* supports Greer's position in concluding that the

Massachusetts choice-of-law provision did not cover the tort-based claims. 2008 U.S. Dist. LEXIS 28129, at *12. The district court permitted only the contract-based claims to go forward. *See id.* at *13.

Not surprisingly, GMS cites no legal authority for the proposition that VUTSA or VCCA claims are "contract-related" torts; Greer has not found any such authority. Rather, district courts have consistently applied the *lex loci delicti* doctrine to VUTSA claims involving out-of-state conduct. *See X-IT Prods.*, *supra* at 4. In addition, the Supreme Court of Virginia held that a VUTSA claim is not an action "relating to" the parties' contract with respect to a fee-shifting provision. *Ulloa v. QSP, Inc.*, 624 S.E.2d 43, 49 (Va. 2006). *Ulloa* explained that where the contract's language limited "'any action' to one 'relating' to their agreement," the language "thereby excludes an independent action such as one under the [Virginia Uniform Trade Secrets] Act." *Id.* The same reasoning applies with equal force here: GMS and Greer agreed, albeit for a brief period of time, that Virginia law governed the Agreement and that "the exclusive venue for any action, demand, claim or counterclaim *relating to or arising from* this Agreement" was in Virginia. JA1412, JA312. That necessarily excludes independent actions, like those under the VUTSA or VCCA.

Indeed, the nature of the liability imposed by VUTSA and VCCA claims is strictly *ex delicto*, and the choice-of-law provision is inapplicable to these claims.

This is not a case in which the language of the provision could be construed to encompass all tort claims, nor is there any evidence that was the parties' intent. GMS does not dispute that all of Greer's allegedly tortious conduct occurred in Colorado. Nor does it dispute that it previously affirmatively argued, and succeeded, in applying Colorado tort law to its breach of the duty of loyalty claim against Greer. *See* JA567-568, JA592-598 (requesting Colorado jury instructions for a breach of duty of loyalty claim). It is incongruous, at best, for GMS to have contended that Colorado law applied to one independent tort claim, but now posit that these two tort claims are governed by Virginia law. Moreover, as established in Greer's Opening Brief, the conduct giving rise to GMS's VUTSA and VCCA claims did not arise out of the Agreement, which was in effect for little more than two months. *See* Opening Br. at 13–14.

GMS does dispute when the alleged VUTSA violations occurred, arguing that there was evidence that Greer violated VUTSA while the Agreement was in effect. Br. at 12. The limited duration of the Agreement and the fact that GMS's own evidence concerned conduct that occurred when the Agreement was not in effect is probative because it demonstrates the importance of the *lex loci delecti* doctrine and why a court should not extend a narrow choice-of-law provision to out-of-state tortious conduct. *See, e.g.*, *McMillan v. McMillan*, 253 S.E.2d 662, 664 (Va. 1979) (declining to depart from the *lex loci delicti* rule due to its "uniformity, predictability,

and ease of application"); *see also Freedman*, 325 F. Supp. 2d at 653 & n.34 (explaining choice-of-law provisions that apply only to the parties' contract "must not be construed to govern the entirety of the parties' relationship and any claim that may arise from that relationship."). When the VUTSA violations actually occurred, however, need not be determined. The *lex loci delicti* doctrine applies to VUTSA claims involving out-of-state conduct, and based on its prior rulings, Greer respectfully submits that if presented with this issue, the Supreme Court of Virginia would find that a VUTSA claim is not "contract-related". *See supra* at 13. Accordingly, the Agreement's choice-of-law provision is inapplicable even if the evidence showed Greer violated the VUTSA between January 21st and April 3rd, 2019.

With respect to the VCCA claim, GMS concedes the VCCA violation occurred after termination of the Agreement. Br. at 9–11. It is undisputed that the VCCA claim was based on "Greer's deletion of data from his work computer and tablet shortly after his termination as a sales agent." Br. at 5. Thus the VCCA claim is wholly distinct and independent from the Agreement, and is in no way "contract-related." As such, even interpreting the choice-of-law provision as broadly and in the manner GMS suggests, it cannot encompass the VCCA claim. *See, e.g.*, *BASF Plant Sci., LP v. Cmmw. Sci. and Indus. Research Org.*, No. 2:17-cv-503, 2019 WL 2017541, at *6 (E.D. Va. May 7, 2019) (finding forum selection clause did not

survive contract's termination). Accordingly, there is no reason for this Court to apply the choice-of-law provision to either tort claim—they are in no way "contract-related" torts, even if the choice-of-law provision was broad enough to encompass "contract-related torts" (and it is not).

*    *    *

Given these circumstances, there is no basis to depart from the Virginia *lex loci delicti* rule. The rule should be followed, and this Court should conclude that the district court erred when it denied Greer's Motion for Judgment as a Matter of Law and submitted these two statutory Virginia tort claims to the jury.

## III.    Greer Properly Preserved the Issue for Appeal.

As GMS's arguments on the legal merits fail, it falls back to alleging that Greer failed to preserve certain arguments at trial. These procedural complaints include the contention that Greer did not preserve a small portion of the argument he raises on appeal: namely that because most of Greer's alleged misconduct occurred prior to the execution of the Agreement, he was not subject to its choice-of-law provision. *See* Opening Br. at 12–14. GMS's argument hinges on an isolated, inadvertent statement made during argument on the Motion for Judgment as a Matter of Law.[1]  *See* Br. at 8–9. When reviewing the argument and Greer's position on

---

[1] During an argument on motions addressing *thirteen* separate counts against multiple defendants, counsel for Greer inadvertently stated that Virginia law applied

16

these claims throughout this case, though, it is evident that Greer has always maintained that the choice-of-law provision only applies to duties and obligations under the Agreement.  *See* JA1018-1019 (Tr. 31:24–32:9) ("In other words, what my clients agreed to when they signed this agreement that is if there was a contractual dispute, that would be governed by Virginia law, . . . What they didn't agree is that any conduct or alleged conduct outside of this agreement is a basis to hail them into Virginia or subject them to a Virginia claim or statute, and that's what's attempting to be done here, Your Honor, and there is no evidence.").

Although it is "indeed the general rule that issues must be raised in lower courts in order to be preserved as potential grounds of decision in higher courts," this "principle does not demand the incantation of particular words; rather, it requires that the lower court be fairly put on notice as to the substance of the issue." *Nelson v. Adams USA, Inc.*, 529 U.S. 460, 469 (2000).  GMS does not contend that the district court was not on notice of the substance of the issue, only that Greer did not

---

"in terms of either for Mr. Greer the period that he was an employee, or the independent sales agents for the period that they were independent sales agents, *but it only applies to their duties and obligations under those agreements*."  JA1018 (emphasis added).  As shown in the joint appendix, there were eleven different contracts in evidence relating to the defendant's relationships with GMS.  *See* JA1409-1444.  Although counsel unintentionally referred to the choice-of-law provision as existing within Greer's employment contract as opposed to the Agreement, he made clear that any choice-of-law provision only applied as to contract claims—not those arising in tort.  This does not constitute waiver or a failure to preserve an issue on appeal, nor does GMS cite to any applicable authority for such a proposition.

sufficiently bring the argument that his misconduct occurred prior to execution of the Agreement to the district court's attention. Br. at 8–9. Based on the arguments the parties made below, Greer is entitled to provide support for his contentions that Virginia tort law does not apply here, and to argue that the choice-of-law provision is inapplicable. In doing so on appeal, that necessarily encompasses the contention that the majority of any tortious conduct occurred when the Agreement was not in effect. The evidence at trial, including GMS's evidence, supports Greer's position.[2] Exhausting all contentions or using particular words during the motion argument was not required. The overarching issue—including GMS's arguments concerning the choice-of-law provision—was squarely before the district court, and had been since Defendants filed their Rule 11 motion. *See, e.g.*, JA511-512.

Also, contrary to GMS's unfounded assertion that Greer "never objected to the court applying Virginia choice of law to actions he took before he entered into the Agreement," (Br. at 8–9), Greer consistently raised the issue that Virginia tort law does not apply to out-of-state conduct, and that the doctrine of *lex loci delicti* applies. *See* JA458-459 (raising issue in Rule 11 motion); JA718-719 (objecting to the application of Virginia law in GMS's proposed jury instructions); JA727-728 (addressing the issue in the pretrial bench brief); JA1017-1022 (Tr. 30:24–35:10)

---

[2] As GMS contends that Greer's tortious conduct is governed by the Agreement, it is GMS's burden of proof, not Greer's, to establish that his conduct occurred while the Agreement was in effect.

and JA1250-1252 (Tr. 7:1–9:21) (arguing the issue in support of the Motion for Judgment as a Matter of Law). Part of this issue includes consideration of the fact that Greer's employment contract contained no choice-of-law provision. *See, e.g.*, JA511-512 (explaining that the *lex loci* doctrine applies to state law trade secret claims, and noting the absence of a choice-of-law provision in Greer's employment contract). Such considerations, however, need not be explicitly stated in order to preserve the overall issue on appeal. *See Nelson*, 529 U.S. at 469.

This Court has explained that it is "obliged on appeal to consider any theory plainly encompassed by the submissions in the underlying litigation." *United States v. Boyd*, 5 F.4th 550, 556 (4th Cir. 2021) (quoting *Volvo Constr. Equip. N. Am., Inc. v. CLM Equip. Co.*, 386 F.3d 581, 604 (4th Cir. 2004)). Additionally, "'variations' on arguments made below may be pursued, so long as the appealing party 'asked both courts to evaluate the same fundamental question.'" *Id.* (quoting *In re Under Seal*, 749 F.3d 276, 288 (4th Cir. 2014)). That is precisely the scenario presented here: Greer has asked both courts to determine the same question—whether two Virginia tort law claims should have been submitted to the jury in the absence of any evidence of in-state tortious conduct.

Greer's argument that allegedly tortious conduct occurred when the Agreement was not in effect is a corollary of his position that the choice-of-law provision in the Agreement is inapplicable to the VUTSA and VCCA claims.

19

Moreover, that position is plainly encompassed by Greer's submissions to the district court.  *See* JA458-459 (Defendants raising the *lex loci delicti* doctrine and the inapplicability of Virginia tort law in Defendants' Rule 11 motion); JA481-485 (GMS's opposition brief, arguing the doctrine is not applicable because of the contractual choice-of-law provisions); JA511-512 (Defendants' reply brief); JA718-719 (Defendants' objections to GMS's jury instructions on the basis that Virginia tort law is inapplicable to certain claims); JA727-728 (Defendants raising the issue again in their pretrial bench brief); JA744-749 (GMS addressing the issue in its pretrial bench brief).

The cases cited by GMS are unavailing, as they each refer to the failure to preserve *evidentiary* objections.  *See United States v. Zayyad*, 741 F.3d 452, 459 (4th Cir. 2014) (finding defendant did not preserve argument regarding evidence below); *Callahan v. P. Cycle, Inc.*, 756 F. App'x 216, 223 (4th Cir. 2018) (unpub.) (explaining that "hinting at the reliability of an expert's testimony is not sufficient to preserve a *Daubert* argument for appeal.").  This appeal has nothing to do with the failure to object to evidence, or, indeed, the failure to object at all.  Greer consistently alerted the district court to the *lex loci delecti* doctrine and that he should not be subject to Virginia tort claims, before and throughout trial.  Any analysis as to the applicability of GMS's choice-of-law provision is part and parcel of this issue because GMS contends it is applicable to Greer's conduct—and it is not.

Furthermore, Greer did not waive his right to make an argument concerning the record evidence as it relates to the application of the *lex loci delicti* doctrine, nor did he waive his right to address GMS's contentions regarding the choice-of-law provision as it applies to the doctrine. *See* Fed. R. App. P. 28 ("The appellant's brief must contain . . . . a statement of the issues presented for review . . . . [and] the argument, which must contain [] appellant's contentions and the reasons for them."); *contra Mayfield v. Natl. Ass'n for Stock Car Auto Racing, Inc.*, 674 F.3d 369, 376–77 (4th Cir. 2012) (finding argument waived where appellants made no argument whatsoever in the appellant's brief); *accord Grayson O Co. v. Agadir Int'l LLC*, 856 F.3d 307, 316 (4th Cir. 2017). Greer put the district court on notice as to the substance of the issue presented on appeal, as required to preserve it for review. As he also addressed the contentions regarding the choice-of-law provision in his Opening Brief, Greer did not waive this argument.

Finally, after GMS concedes that Greer's violation of the VCCA occurred after termination of the Agreement, it argues at length, without any citation to the record, that the jury could have found Greer violated the VUTSA after he entered into the Agreement. *See* Br. at 10–14. GMS's efforts to place Greer's alleged VUTSA violations into that short timeframe only serve to emphasize the importance of the *lex loci delicti* doctrine, and why the Agreement's choice-of-law provision is inapplicable. *See, e.g., McMillan*, 253 S.E.2d at 664. It would be incongruous to

21

find that the choice-of-law provision in the Agreement, effective for less than three months, extends so broadly as to (1) encompass independent tort actions, and (2) apply to Greer's purported actions and inactions that occurred both well before the Agreement was in effect and after it was terminated. These two Virginia tort claims are not covered by the Agreement and should not have been submitted to the jury as there was no evidence of any in-state conduct.

## IV. A Remand for Retrial is Not Warranted; This Court Should Direct The District Court To Enter Judgment In Greer's Favor.

As set forth herein and in Greer's Opening Brief, the district court erroneously denied Greer's Motion for Judgment as a Matter of Law on the VUTSA and VCCA claims. This Court should direct the entry of judgment in Greer's favor on those claims on remand, as the appropriate remedy is dismissal.

GMS contends that "Greer should not be let off the hook for his misconduct," and that the case could be remanded for a new trial under Colorado law. Br. at 19–20. In the event the Court decides the district court erred in denying Greer's Motion for Judgment as a Matter of Law, this Court has the discretion to order a new trial, direct the district court to determine whether a new trial should be granted, or direct the entry of judgment. *See* Fed. R. Civ. P. 50(e). In exercising this discretion, "one of the keys to [the] exercise" is "fairness to the parties." *Sardis v. Overhead Door Corp.*, 10 F.4th 268, 299 (4th Cir. 2021) (cleaned up) (citations omitted).

Allowing the VUTSA and VCCA claims to be relitigated under Colorado law would be unfair to Greer. Had these claims been pled properly, each claim would face different legal hurdles which GMS could not clear. As raised in Greer's Opening Brief, if GMS raised a Colorado trade secrets claim now, it would be barred by the statute of limitations. Colorado has a three-year limitations period for such claims, Colo. Rev. Stat. § 7-74-107, and any alleged conduct ended over three years ago—specifically, in April 2019. *See* Opening Brief at 18–19. And Colorado's version of the Uniform Trade Secrets Act is considerably different than Virginia's. *See* Opening Brief at 11.

Additionally, Colorado's computer crimes statute does not provide a private right of action. Colo. Rev. Stat. § 18-5.5-102. In trying to overcome that prohibition, GMS argues that it should be allowed to proceed under a "negligence per se" cause of action. *See* Br. at 21. However, that allowance is far from established in Colorado law. *See, e.g.*, *MSC Safety Sols., LLC v. Trivent Safety Consulting, LLC*, No. 1:19-cv-938, 2019 WL 5189004, at *8 n.3 (D. Colo. Oct. 15, 2019) (stating "the Court has found[] no case in Colorado addressing a negligence per se claim for which the plaintiff invokes the Cybercrime Statute."). Furthermore, the Colorado cybercrime statute "closely follows the language" of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, *et seq.* ("CFAA"). *Id.* at *8. Here, the district court dismissed the CFAA claim against Greer by granting that ground of his

Motion for Judgment as a Matter of Law. *See* JA1281-1282. In light of the foregoing, requiring Greer to submit to a second trial, after three-plus years of litigation, and to incur further expense and inconvenience, is unfair, particularly given the legal weakness of these two claims.

Last, GMS takes issue with Greer's diligence in raising his position that Virginia tort law does not apply to these claims. *See* Br. at 20–21. Indeed, GMS goes so far as to accuse Greer of misrepresentations and false statements. *See id.* at n.2. In reality, Greer was diligent in raising this argument, especially in light of the procedural history of this case. GMS filed its first amended complaint nine months after it filed suit, and filed second and third amended complaints at the end of 2020. *See* JA9-21. After discovery, including extensive motions practice, Greer raised this issue in Defendants' Rule 11 motion, which was filed three months in advance of the originally scheduled trial date and nearly a year before trial took place. *See* JA458-459. The issue was also repeatedly raised during the trial, including in objections to GMS's jury instructions (JA718-719), Defendants' pretrial brief (JA727-728), and during motions and arguments. JA1017-1022 (Tr. 30:17–35:10); JA1250-1252 (Tr. 7:1–9:21).

Fairness is amplified where the other party is "on notice every step of the way." *See Sardis*, 10 F.4th at 299 (concluding that this Court could fairly direct judgment in a defendant's favor in part because a pre-trial *Daubert* motion put the

24

plaintiff on notice of the deficiencies in an expert report). Consistent with what unfurled in discovery, GMS submitted no evidence at trial that Greer's actions or inactions occurred in Virginia, and GMS was well aware of Greer's position on the application of Virginia law to its tort claims. Indeed, GMS does not dispute that Greer lived, worked, and only engaged in any tortious conduct in Colorado. In fact, GMS advocated for the application of Colorado law to its breach of duty of loyalty claim. *See* JA567-568, JA592-598. There is no prejudice to GMS from Greer raising the application of *lex loci delicti* and the inapplicability of Virginia tort law when he did; and law and equity dictate that these claims be dismissed.

## **CONCLUSION**

For the foregoing reasons, and those set forth in Greer's Opening Brief, this Court should reverse the district court's denial of Greer's Motion for Judgment as a Matter of Law with respect to GMS's Virginia Uniform Trade Secrets Act claim (Count V) and Virginia Computer Crimes Act claim (Count VIII), and remand with instructions to enter judgment in Greer's favor.

Dated: March 14, 2023

/s/ Robert W. McFarland
Robert W. McFarland
V. Kathleen Dougherty
Jeanne E. Noonan
MCGUIREWOODS LLP
9000 World Trade Center
101 West Main Street
Norfolk, VA 23510
T: (757) 640-3700
F: (757) 640-3701
rmcfarland@mcguirewoods.com
vkdougherty@mcguirewoods.com
jnoonan@mcguirewoods.com

*Counsel for Defendant-Appellant*

## **CERTIFICATE OF COMPLIANCE**

This brief complies with the type-volume limitation of Fed. R. App. P.

32(a)(7)(B) because:

- This brief contains 6,292 words, excluding the parts exempted by Fed.

  R. App. P. 32(f).

This brief complies with the typeface and type style requirements of

Fed. R. App. P. 32(a)(5) and 32(a)(6) because:

- This brief has been prepared in a proportionally spaced 14-point

  Times New Roman font using Microsoft Word.


*/s/ Robert W. McFarland*
Robert W. McFarland

*Counsel for Defendant-Appellant*

## **<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on March 14, 2023, I filed the foregoing with the Clerk of the United States Court of Appeals for the Fourth Circuit using the appellate CM/ECF system, which will also serve counsel of record.

*/s/ Robert W. McFarland*
Robert W. McFarland

*Counsel for Defendant-Appellant*